THOMAS J. DANIELS *vs.* SAMUEL F. J. NEWTON & another.

An action for the breach of a written agreement to purchase land, brought before the expiration of the time given for the purchase, cannot be maintained by proof of an absolute refusal on the defendant's part ever to purchase.

WELLS, J. This action is for breach of an agreement in writing, under seal, for the purchase of certain land from the plaintiff by the defendants. The time for performance is indicated by two clauses ; one that "said premises are to be conveyed within thirty days from this date ; " the other that "in case the said parties of the second part should fail to sell their estate at the expiration of the thirty days, then we agree to extend this agreement for thirty days." The inference from the latter clause is that the defendants were to have the whole thirty days for performance on their part, and, in the contingency mentioned, thirty days more. Such was the effect given to the terms of the written instrument, by the ruling at the trial, and we think correctly.

The plaintiff relied upon a supposed breach of the agreement by the defendants within the thirty days ; to wit, May 29, the writing being dated May 15, and thereupon had brought his action May 30. The ruling of the court upon this point was that if the defendants "fixed a day, within said thirty days, for the performance of said agreement by the respective parties, and the plaintiff was then ready to perform his part, and the defendants then refused absolutely to perform said agreement on their part, then or at any other time, that would be a breach of the agreement on their part for which the plaintiff can maintain this action."

We do not understand this ruling to have been based upon the supposition of an oral agreement in regard to the time of per

formance varying the terms of the written instrument as an executory contract. It would have been clearly erroneous in that aspect; first, because no such substituted agreement is set forth in the declaration; secondly, because such an oral agreement in regard to land would be within the statute of frauds, and could not be so enforced.

Subsequent oral agreements in regard to the mode and time of performance of written contracts relating to land, are doubtless admissible to affect the question whether the conduct of either party, as proved, constitutes a breach of his written agreement. In that aspect, the evidence adduced by the plaintiff in this case was competent, and might have warranted the jury in finding a breach of the contract by the defendants, if they did not revoke their refusal within the thirty days, even without any further offer to perform on the part of the plaintiff.

The action having been brought immediately upon the refusal, and within the time allowed for performance by the terms of the written contract sued upon, the effect of the ruling was that an absolute refusal of performance, purporting and intended to be a refusal to fulfil the contract at any time, would be of itself a breach of a contract for acts to be done within a time not yet expired, so that an action would lie forthwith. The proposition involved in this ruling, to wit, that there may be a breach of contract, giving a present right of action, before the performance is due by its terms, seems to have been adopted by recent English decisions. *Frost* v. *Knight*, L. R. 7 Ex. 111 (1872). *Hochster* v. *De la Tour*, 2 E. & B. 678 (1853).

It is said to be applicable, not only in cases where performance has been rendered impossible by the voluntary conduct of the party, as, in agreements for marriage or conveyance of land, by marriage or conveyance to another, and by way of exception to the general rule formerly maintained, but to the full extent of a general rule ; so that an absolute and unqualified declaration of a purpose not to fulfil or be held by the contract, made by one party to the other, may be treated as of itself a present breach of the contract by repudiation, as well before as after the time stipulated for its fulfilment by such party. The point was elaborately

discussed in *Frost* v. *Knight*, by Lord Chief Justice Cockburn, and the principle evolved is expressed in these propositions, on page 114:

" The promisee has an inchoate right to the performance of the bargain, which becomes complete when the time for performance has arrived. In the mean time he has a right to have the contract kept open as a subsisting and effective contract. Its unimpaired and unimpeached efficacy may be essential to his interests. His rights acquired under it may be dealt with by him in various ways for his benefit and advantage."

" The contract having been thus broken by the promisor and treated as broken by the promisee, performance at the appointed time becomes excluded, and the breach by reason of the future non-performance becomes virtually involved in the action as one of the consequences of the repudiation of the contract; and the eventual non-performance may therefore, by anticipation, be treated as a cause of action, and damages be assessed and recovered in respect of it, though the time for performance may yet be remote."

The first of these two propositions would apply with peculiar force to commercial paper, especially if its repudiation by the maker were made public. We see no reason for a distinction which should exclude it from the same rule that applies to other promises in writing, in respect to what will constitute a breach of the principal contract between the maker and payee. We are not aware, however, that any decision has carried out the rule by applying it to such contracts ; and we doubt if the learned jurists who propounded it would have been willing to follow it to that extent.

The doctrine has never been adopted in this Commonwealth · nor has it received any recognition, so far as we are able to learn, beyond that in *Heard* v. *Bowers*, 23 Pick. 455, 460. The court in that case, refer to *Ford* v. *Tiley*, 6 B. & C. 325, 327, and 5 Vin. Ab. 224 ; the doctrine announced in *Ford* v. *Tiley*, being, as it appears to us, an erroneous application of the maxims contained in Viner.

A renunciation of the agreement, by declarations or inconsistent conduct, before the time of performance, may give cause for treating it as rescinded, and excuse the other party from making ready for performance on his part, or relieve him from the necessity of offering performance in order to enforce his rights. It may destroy all capacity of the party, so disavowing its obligations, to assert rights under it afterwards, if the other party has acted upon such disavowal. But we are unable to see how it can, of itself, constitute a present violation of any legal rights of the other party, or confer upon him a present right of action. An executory contract ordinarily confers no title or interest in the subject matter of the agreement. Until the time arrives when, by the terms of the agreement, he is or might be entitled to its performance, he can suffer no injury or deprivation which can form a ground of damages. There is neither violation of right, nor loss upon which to found an action. The true rule seems to us to be that in order to charge one in damages for breach of an executory personal contract, the other party must show a refusal or neglect to perform, at a time when and under conditions such that he is or might be entitled to require performance. *Frazier* v. *Cushman*, 12 Mass. 277. *Pomroy* v. *Gold*, 2 Met. 500. *Hapgood* v. *Shaw*, 105 Mass. 276. *Carpenter* v. *Holcomb*, 105 Mass. 280. Such undoubtedly was the interpretation of the common law in all the earlier decisions. *Phillpotts* v. *Evans*, 5 M. & W. 475. *Ripley* v. *M'Clure*, 4 Exch. 345. *Lovelock* v. *Franklyn*, 8 Q. B. 371.

The case of *Ford* v. *Tiley*, 6 B. & C. 325, cited in *Heard* v. *Bowers*, was an action on an agreement of the defendant that he would, as soon as he should become possessed of a certain public house, execute a lease thereof to the plaintiff for a term of years from December 21, 1825. There was in fact an outstanding lease of the premises to another, to expire at midsummer, in 1827. Before that term expired, the defendant joined with the trustees, who held the legal title, in a lease to another party for 23 years. It was held to be a breach of his agreement with the plaintiff, for which an action would lie at once; because the defendant had given up his right to have the possession, and put it out of his

power, so long as his own lease for twenty-three years should last. It does not appear that the suit was brought before December 21, 1825; nor that the time when the defendant would become possessed, was mentioned in the agreement. It was not the case of an agreement to make a lease at a named future day. The outstanding lease was an extrinsic fact, merely affecting the occurrence of the contingency upon which the performance of the agreement depended; it had no other force in the contract. When, therefore, the defendant made a lease to a stranger, he could no longer say that he was prevented from becoming possessed by the outstanding previous lease, because he had put it out of his power to come into possession, if that were surrendered or otherwise terminated. The plaintiffs' right to have a lease presently was subject only to a contingency, of which the defendant had no longer the ability to avail himself. The judgment accords with the rule we have indicated. But in giving judgment, Bayley, J., citing 1 Rol. Ab. 248; 5 Vin. Ab. 225; 21 Ed. IV. 55, and Co. Litt. 221 b, proceeds to say: "Now if the feoffment of a stranger before the day be a breach of a condition to enfeoff J. S. at a given day, the granting of a lease to a stranger before the day will be a breach of a contract to grant a lease to J. S. at a given day, and *a fortiori* will it be a breach so long as the lease to such stranger remains in force."

It seems to us, however, that the reasoning from conditions of forfeiture or defeasance to executory contracts is illogical. If one, having an estate on condition, by his own act in dealing with the estate, puts it out of his power to perform or comply with the condition, he does what is inconsistent with the terms upon which alone he has the estate; and his grantor may reënter, even before the time of stipulated performance, not because of a new right acquired by the terms of the agreement, but because the right of the other party having become forfeited or extinguished by his breach of the condition, or violation of the terms of his tenancy, the grantor or feoffor is restored to his former estate and right. It is by virtue of that right or title that he enters, the other party being no longer able to avail himself of his conditional estate or right. The analogy holds good if the plaintiff's right to require

performance of the agreement awaits only a contingency which the defendant removes by making it impossible, which was the real case in *Ford* v. *Tiley*. It gives no support to the very different proposition that, in a contract to be performed on a given day, the voluntary disability of one party will entitle the other to require performance, or to have an action for non-performance, before that day arrives.

The distinction is recognized by the authorities referred to by Mr. Justice Bayley. Lord Coke says : " And herein a diversity is to be observed between a disability for a time on the part of the feoffee, and a disability for a time of the part of the feoffor." In the one case, albeit " a certain day be limited, yet the feoffee being· once disabled is ever disabled." " And the reason of the diversity is, for that, as Littleton saith, *maintenant* by the disability of the feoffee, the condition is broken, and the feoffor may enter, but so it is not by the disability of the feoffor, or his heirs ; for if they perform the condition within the time, it is sufficient, for that they may at any time perform the condition before the day." Co. Litt. 221 b ; 5 Vin. Ab. 224, Condition, B. c.

We have examined with care the opinions of Lord Chief Justice Cockburn in *Frost* v. *Knight*, and of Lord Campbell in *Hochster* v. *De la Tour*, and we are not convinced that the conclusions at which they arrive are founded in sound principles of jurisprudence, or sustained by the authorities cited in their support.

*Frost* v. *Knight* was an action upon a promise to marry the plaintiff on the death of the defendant's father. The defendant broke off the engagement by announcing his intention not to fulfil his promise. The action was brought without waiting for the death of the defendant's father. The plaintiff having recovered a verdict, judgment was arrested by the Court of Exchequer; but on error it was held, in the Exchequer Chamber, that she was entitled to retain the verdict. The lord chief justice cites *Lovelock* v. *Franklyn*, 8 Q. B. 371, and *Short* v. *Stone*, 8 Q. B. 358, as having " established that where a party bound to the performance of a contract at a future time, puts it out of his own power to fulfil it, an action will at once lie." Neither decision cited establishes that proposition, where a definite time for per-

formance is appointed by the terms of the contract; but only where the plaintiff was entitled to require performance upon some previous act or request which the conduct of the defendant has dispensed with.

*Short* v. *Stone* was upon a promise to marry the plaintiff " within a reasonable time after request." The defendant mar-- ried another, and this was alleged as the breach. It was held that request was not necessary, and need not be alleged. It was rendered unavailing, and therefore unnecessary, by the act of the defendant, which was of itself a breach of the contract by render- ing performance impossible. No question arose, or could arise, whether the action was premature, because there was no future time certain for performance. The defendant had made the only limit of time impossible.

*Lovelock* v. *Franklyn* was upon an agreement to assign a lease, at any time within seven years, upon payment of a sum named. The decision is explicitly upon the ground that the option as to the time, within the seven years, was with the plaintiff. " The defendant is to be ready throughout." Coleridge, J., p. 375. Denman, C. J., says: " Here the party puts it out of his power to perform what he has agreed to perform; that is, to assign at any time at which he may be called upon. This distinction shows that the passage cited from Lord Coke is inapplicable; that proves no more, on the point now before us, than that if an act is to be performed at a future time specified, the contract is not broken by something which may merely prevent the performance in the mean time. We are introducing no novelty. In all the cases put for the defendants, the party had the means of rehabili- tating himself before the time of performance arrived; here he has incapacitated himself at the very time when he may be called on and should be ready." Patteson, J., says: " In this particular contract, the defendant has undertaken to keep himself ready for the whole time." So far from being sustained by this case, the proposition, to which it is cited by Lord Chief Justice Cockburn, is most carefully excluded, if not expressly disavowed.

The proposition, even if established, is not decisive of the case now before us. We have discussed it, however, because it has

an important bearing upon the argument, and is essential to the result reached in *Frost* v. *Knight.* The lord chief justice, taking it as established by the cases cited, proceeds to the next step. He says, " The case of *Hochster* v. *De la Tour,* upheld in this court in the *Danube & Black Sea Co.* v. *Xenos,* [13 C. B. (N. S.) 825,] went further, and established that notice of an intended breach of a contract to be performed in *futuro* had a like effect."

*Hochster* v. *De la Tour* appears to us to be the only case which sustains this position as an adjudication, although that decision has been recognized in several subsequent cases. *Avery* v. *Bowden,* 5 E. & B. 714 ; 6 E. & B. 952. *Wilkinson* v. *Verity,* L. R. 6 C. P. 206. It was an action upon a contract of hiring to go as courier for the plaintiff from June 1, 1852, at monthly wages. There was notice of renunciation of the employment ; and the action brought May 22, 1852, was sustained. Lord Campbell ʼsays : " But it cannot be laid down as a universal rule that, where by agreement an act is to be done on a future day, no action can be brought for a breach of the agreement till the day for doing the act has arrived. If a man promises to marry a woman on a future day, and before that day marries another woman, he is instantly liable to an action for breach of promise of marriage. *Short* v. *Stone,* 8 Q. B. 358." The statement we have already made of *Short* v. *Stone,* will show how the essential fact in that case is mistaken, and the reason of the decision misapplied. He adds : " If a man contracts to execute a lease on and from a future day for a certain term, and, before that day, executes a lease to another for the same term, he may be immediately sued for breaking the contract. *Ford* v. *Tiley,* 6 B. & C. 325." We have already shown in what manner *Ford* v. *Tiley* fails to sustain the position for which it is cited.

In *Bowdell* v. *Parsons,* 10 East, 359, cited by Lord Campbell, as showing that upon a contract for sale and delivery of goods at a future time, an action " might have been brought before that time as soon as the vendor had sold and delivered to another," the only question was of the necessity of alleging time and place of request to deliver ; the plaintiff being entitled to delivery on request.

In *Planché* v. *Colburn*, 8 Bing. 14, also cited, no time was specified. The plaintiff would have been entitled to his compensation upon performance of the service he undertook, which was the preparation of an article or work for the defendant's periodical publication within a reasonable time. He had begun the work towards performance on his part. Full performance by him was rendered useless, and practically prevented by the defendant's abandonment of the enterprise. The case in reality establishes nothing more than that the plaintiff was entitled to treat the contract as rescinded, and recover for what he had done upon a *quantum meruit*.

*Elderton* v. *Emmens*, 4 C. B. 479 ; 6 C. B. 160, and 4 H. L. Cas. 624, was upon a contract of employment. The plaintiff had entered upon the service and was dismissed. The case recognizes a right of action, founded upon the defendant's obligation to continue the plaintiff in his service, and a breach of that obligation by wrongfully dismissing him. From the opinions of Martin, B., 4 H. L. Cas. 648, and of Talfourd, J., p. 652, it would appear that the action was not brought until after the term of stipulated service had expired. But we conceive that it would have afforded no support to the doctrine for which it was cited, if it had been brought immediately upon the dismissal of the plaintiff ; because that was the time for performance of the defendant's agreement to employ the plaintiff, for breach of which the action was brought.

The *Danube & Black Sea Co.* v. *Xenos*, 13 C. B. (N. S.) 825, by which *Hochster* v. *De la Tour* is said to have been upheld, was an action upon an agreement by which the plaintiff was to receive and carry freight for the defendant, the shipment to commence on August 1st, and the action was not brought until after August 1st. The only question was whether a repudiation of the agreement, notified to the plaintiff before August 1st, and not recalled, excused the plaintiff from making an offer to perform on that day, and was sufficient to show a breach of the agreement. The judgment is in accordance with that in *Ripley* v. *M' Clure*, 4 Exch. 345, and with the plain rule of law that when the plaintiff is prevented by the defendant from performing the service or doing the act which will entitle him to the fruits of his contract,

he is thereby excused from performance on his part, and is entitled to an appropriate remedy by action.    *Scot* v. *Mainy*, Poph. 109.    *Goodman* v. *Pocock*, 15 Q. B. 576.    *Cort* v. *Ambergate*, *&c., Railway Co.* 17 Q. B. 126.

But the question, in what mode and at what time that remedy may be sought, must depend upon the provisions of his contract, and the nature of the rights to which it entitles him, and which are affected by the conduct of the other party.    Throughout the whole discussion both in *Hochster* v. *De la Tour*, and *Frost* v. *Knight*, the question as to what conduct of the defendant will relieve the plaintiff from the necessity of showing readiness and an offer to perform at the day, in order to make out a breach by the other, appears to us to be confounded with that of the plaintiff's cause of action ; or rather, the question, in what consists the plaintiff's cause of action, is lost sight of ; the court dealing only with the conduct of the defendant in repudiating the obligations of his contract.

Much argument is expended in both cases upon the ground of convenience and mutual advantage to the parties from the rule sought to be established.    But before that argument can properly have weight, the point to be reached must first be shown to be consistent with logical deductions from the strictly legal aspects of the case.    The legal remedy must be founded on some present legal right, and must conform to the nature of that right.    Until the plaintiff has either suffered loss or wrong in respect of that which has already vested in him in right, or has been deprived of or prevented from acquiring that which he is entitled to have or demand, he has no ground on which to seek a remedy by way of reparation.    The conduct of the defendant is no wrong to the plaintiff until it actually invades some right of his.    Actual injury and not anticipated injury is the ground of legal recovery. The plaintiff's rights are invaded by repudiation of the contract only when it produces the effect of non-performance, or prevents him from entering upon or completing performance on his part, at a time when and in the manner in which he is entitled to perform it or to have it performed.

That this is the natural and ordinary rule seems to be recog-

nized by Lord Campbell, when he declares that " it cannot be laid down as a universal rule," and proceeds to point out exceptions. And Lord Chief Justice Cockburn concedes it to be true " that there can be no actual breach of a contract by reason of non-performance, so long as the time for performance has not yet arrived." L. R. 7 Ex. 114. But preceding " inchoate right " is discovered, and a corresponding obligation implied, upon which there may be held to be " a breach of the contract when the promisor repudiates it and declares he will no longer be bound by it."

In *Hochster* v. *De la Tour*, Lord Campbell assigns, as one reason for the decision, that in case of employment as courier, and of promise to marry, a relation is established between the parties by the contract, even before the time of performance ; " they impliedly promise that in the mean time neither will do anything to the prejudice of the other inconsistent with that relation ; " and " it seems to be a breach of an implied contract if either of them renounces the engagement." In *Frost* v. *Knight*, the lord chief justice remarks of the promise to marry : " On such a contract being entered into, not only does a right to its completion arise with reference to domestic relations and possibly pecuniary advantages, as also to the social status accruing on marriage, but a new status, that of betrothment, at once arises between the parties." " Each becomes bound to the other ; neither can, consistently with such a relation, enter into a similar engagement with another person ; each has an implied right to have this relation continued till the contract is finally accomplished by marriage."

These, however, are considerations which touch the interpretation and effect of the particular kind of contract ; and so far as they tend to sustain the decisions upon the ground of implied obligations arising and requiring observance at once upon entering into the relation by means of such a contract, they also tend to remove the decisions themselves out of the range of the question we are now discussing. If there be sound reason to deduce from a promise to marry, or to employ in a special capacity, at a future time, present obligations of implied contract, upon which an ac-

tion may be founded, in which the breach of the entire agreement "by reason of the future non-performance" will be "virtually involved," "as one of the consequences of the repudiation of the contract," it surely is not sound reasoning by means of that process to arrive at the conclusion that all contracts, having a future day for their performance, include like rights and obligations, so as to enable one party to sue at once, as for a breach, whenever the other announces beforehand his purpose of future non-fulfilment. If this is the result, as it appears to be, of the English decisions referred to, or of the reasoning in those cases, we cannot accede to it. We have no occasion now to determine what may be the rule, where the contract may fairly be interpreted as establishing between the parties a present relation of mutual obligations, because we are of opinion that no such implied obligations can be engrafted upon the contract in the present case. It simply binds the defendants to receive a deed of real estate and pay or secure the purchase money ; and its written provisions, by which alone their obligations are to be ascertained, allow them thirty days at least within which to fulfil their agreement. The plaintiff could require nothing of them until the expiration of that time ; and no conduct on their part or declaration, whether of promise or denial, could give him any cause of action in respect of that agreement of sale. This action therefore cannot be maintained. *Exceptions sustained.**

*L. S. Dabney*, for the defendant.

*W. Colburn*, for the plaintiff.

---

\* At March session, 1874, for Suffolk, was argued and determined

JESSE L. NASON *vs.* JOHN S. HOLT.

CONTRACT, for the breach of a written agreement to convey real estate. The writ was dated September 16, 1871. The agreement which was dated September 14, 1871, was an undertaking to convey the estate within fourteen days from that date, and was signed "J. S. Holt, by G. F. Hunting & Leavitt." September 15, 1871, "the defendant repudiated the authority of the agents to make or sign the contract, and declared they had no authority to make any sale of the premises, and told the plaintiff he would not convey the estate to him." September 16, 1871, "the defendant orally bargained for the sale of the estate to one Smith, and conveyed the same to him by deed, dated Sep-

tember 16, 1871, acknowledged, delivered and recorded September 23, 1871." After verdict for the plaintiff in the Superior Court, *Brigham*, C. J., reported the case for the determination of this court.

*D. C. Linscott*, for the defendant.

*F. W. Kittredge*, for the plaintiff.

WELLS, J. This action was commenced September 16, 1871. The contract was dated September 14, 1871, and the defendant was to have fourteen days from that date within which to make the stipulated conveyance. His conveyance to another party by deed delivered September 23, 1871, cannot be availed of as a breach by disabling himself from fulfilling his agreement with the plaintiff, because even if effect be given to that according to its date and the time of the oral agreement in pursuance of which it was made, to wit, September 16, 1871, it does not appear to have been before the suit was commenced. There had been no breach, then, unless the declarations of the defendant, on the fifteenth of September, that he would not convey the estate to the plaintiff, and repudiating the authority of the agents to make the sale or sign the memorandum, constitute such breach.

Such declarations might avail the other party, by way of excuse for failure to perform on his part, in an action against him for breach of the contract. But in order to charge one in damages for breach of the contract, the other party must go further than merely to excuse his own non-performance. He must show a refusal or neglect to perform, at a time and under conditions in which he was entitled to require performance. *Frazier* v. *Cushman*, 12 Mass. 277. *Pomroy* v. *Gold*, 2 Met. 500. *Hapgood* v. *Shaw*, 105 Mass. 276. In *Carpenter* v. *Holcomb*, 105 Mass. 280, the declaration of the defendant that he would not perform was made at the time when performance was due, and when the parties had met for the purpose of closing the contract. It was held therefore to warrant the inference that it was intended as an absolute and final refusal to fulfil the agreement, and as a waiver of any tender of performance by the other party, and of any further preparation for that purpose.

The declarations in this case were made the next day after the contract was signed. The defendant was under no obligation to make the conveyance at that time, and was not called upon to do so. They indicate a denial of his obligation, and a purpose to refuse compliance with the terms of the written agreement signed by his agents. But that would not prevent his subsequent conclusion to carry the agreement into effect. It is not, of itself, a present breach of the agreement. *Daniels* v. *Newton, supra.* We are of opinion, therefore, that the evidence would not warrant the jury in finding a breach of the agreement at the time the action was commenced ; and that there should be

*Judgment for the defendant.*