## CLARK v. NATIONAL BENEFIT & CASUALTY CO.

(Circuit Court, E. D. Missouri, E. D. April 20, 1895.)

No. 3,812.

1. CONTRACTS—MEASURE OF DAMAGES.
The N. Ins. Co., a corporation of Wisconsin, was negotiating for a license from the insurance department of Missouri to do business in that state. While such negotiations were pending, it made a contract with plaintiff to employ him as its general agent in Missouri and certain other states, when its license had been obtained. Such contract was to be terminable by either party on 30 days' notice. There was considerable delay in securing the license from the insurance department, and, two months after the making of the contract, plaintiff sued the N. Co. for damages, claiming a breach of the contract by its failure to prosecute with due diligence its application for license. Upon the trial, the court instructed the jury that they could only allow such sum as damages as would be a fair compensation to plaintiff for the reasonable value of his services from the date when the N. Co., by reasonable efforts, might have obtained its license, to the time when the action was brought. *Held*, that the plaintiff was not entitled to any more ample measure of damages.

2. SAME—TERMINATION.
*Held*, further, that as the institution of plaintiff's suit was either an acceptance of a termination of the contract by defendant, or a declaration of plaintiff's purpose to terminate it; plaintiff was not entitled to damages beyond the commencement of his suit.

3. SAME—BREACH.
It seems that the plaintiff was not entitled to claim that there had been a breach of the entire contract, by reason of the defendant's renunciation or inability to perform.

This was an action by George W. Clark against the National Benefit & Casualty Company to recover damages for the breach of a contract. The jury gave plaintiff a verdict for $238.26. Plaintiff moved for a new trial.

The defendant was organized as a corporation under the laws of the state of Wisconsin, for the purpose of doing a fidelity, guaranty, and acci-

dent insurance business. Desiring to extend its work into the states of Missouri, Arkansas, Louisiana, and Texas, it sought, first, an admission into the state of Missouri, and while its officers were here for the purpose of procuring a license, pursuant to the statutory regulations of the state of Missouri, from the insurance commissioner of that state, and before making an application to him, the plaintiff claims that said officers employed him as a general agent to represent said company and to solicit business in its line for it, within the above specified territory, agreeing to pay him for his services 30 per cent. of the premiums upon all contracts of insurance obtained in that territory. The date of this agreement is fixed at about the 17th of January, 1894. The defendant denies that any absolute agreement was made with plaintiff, but says the contract was conditioned upon the future fact of getting a license to do business in those states. The nature and circumstances of its making, as testified to by plaintiff, seems to imply the same thing. It was agreed, if the contract was made, that it contain a provision entitling either party to determine it after giving 30 days' notice of an intention so to do. The breach complained of is that the defendant "has failed and refused, and still fails and refuses, to comply with the insurance laws of this or any other state assigned to plaintiff, or obtain a license to legally do business therein." The evidence shows that on the very date at which plaintiff claims the contract to have been made, and after the making of the contract, assuming that a positive agreement was reached, the officers of the defendant company went to the insurance department, and there made application for admission to do business. The application was not then entertained or acted upon by the insurance department on account of the absence of that particular officer whose duty it was to attend to matters of that character. On the return of such officer, the application was taken up, and an objection was found to certain securities which were deposited with the insurance commissioner of Wisconsin, and the defendant was required to change such securities (amounting in all to about $20,000), and substitute in lieu of them other securities which would be approved by the insurance department of Missouri. The deposit required by the laws of the state of Wisconsin for an insurance company doing business of the character which this was authorized to do was $100,000. The law of Missouri is substantially the same; but, because of a certain feature in the charter of the defendant company, the insurance commissioner of Missouri exacted a deposit of $200,000. The evidence shows that, so far as a compliance with the demand of the insurance department of Missouri to substitute other securities instead of those objected to, the defendant's officers set about with reasonable diligence to comply with that demand. It, in various ways, also, and through several officers and agents, endeavored to persuade the insurance commissioner of Missouri that a deposit of $100,000 was all that the law of the state of Missouri required. This contest was bandied back and forth until, finally, the insurance commissioner of Missouri receded from his position, and held that the amount of the deposit was sufficient, and finally, in the latter part of October, 1894, admitted the defendant company to do business in Missouri, not, however, until he had required it to renounce the right to do a certain character of business which its charter authorized, or might be construed to authorize, it to do. The correspondence showed some impatience upon the part of the plaintiff at not being able to get to doing business for the company in the state of Missouri, and that the defendant endeavored to assuage that impatience by saying that it would in a short time obtain the necessary permit, urging the plaintiff to hold on. Finally, the plaintiff notified the defendant that, by its failure to prosecute with reasonable diligence its suit to procure the license in the state of Missouri, it had broken the contract, and that he would sue for damages; and hence he instituted this action, on the 17th day of March, 1894. The jury returned a verdict for the plaintiff in the sum of $238.26. Plaintiff files a motion for a new trial.

Reynolds & Harlan, C. A. Powers, and Geo. H. Shields, for plaintiff.

Boyle & Adams, for defendant.

PRIEST, District Judge (after stating the facts). The chief subject of contention upon this motion for a new trial is as to the proper measure of the damages. The jury was told that they could only allow such a sum as would be a fair compensation to the plaintiff for the reasonable value of his services from and after that date, when the defendant, by its reasonable efforts, ought and could have obtained permission to do business in the territory allotted to him up to the date upon which this suit was brought. The jury have found a positive contract to have been made on the 17th of January, 1894. Suit was brought the 17th of the ensuing March, and the jury awarded the plaintiff the sum of $238.26.

The plaintiff contends that the legal rule for the computation of his damages as given to the jury was too limited and narrow; that if not entitled to recover the full value of his contract, as for a complete and indivisible breach, he should, at least, have been entitled to recover such damages as had accrued down to the time of the trial. The rule of law to be applied to the estimate of damages for a rescission or breach of contract may differ according to the varying terms of each particular agreement. The end to be attained by juridical inquiry is compensation to the aggrieved party,—a compensation based upon reasonably proximate, clear, certain, and demonstrable consequences, not upon speculation or possibility or indefinite probability. Either one of the rules invoked by the plaintiff may be just when an appropriate state of facts exist for their befitting application. But there are confessedly many cases in which they could not at all be utilized with any degree of justness or advantage.

Let us take the first of the two rules claimed by the plaintiff,— namely, that the entire contract was broken, and he was entitled to have its full value awarded in damages,—and see how it would work with the particular facts of this case. The contract has no definite duration of time for its continuance, no fixed period for its expiration. By its terms it might be concluded by either party upon 30 days' notice. Neither party up to the time of the trial had given such notice, unless we hold the bringing of the suit to be the equivalent of such notice,—a matter to which we shall give some attention later on. In order to calculate the value of the contract, we must have, as one of the essential factors for computation, a definitive term of duration. Without it the result would be speculation, pure and simple. Upon the supposition that the contract might continue for two or three years, an award might be made of its value for that time; and, rightfully and according to the very letter of the contract, the defendant could conclude its operation 30 days after the trial. The very character of the agreement precludes the application of that principle. With not less force does the want of proof of the nature of the injury repel its application. The plaintiff did no work under the contract of an extent and character that would afford an index or reasonably definite criterion by which to measure the profits he would derive under the workings of the contract. It not only devolves upon the claimant to establish the violation of the agreement, but he must

be able to give some certain data which may with reasonable accuracy be employed to estimate such damages as are computable and recognized as such by the law. Unless this be done, the plaintiff can only recover nominal damages. Besides, the facts of this case bring it within the rule of renunciation of executory contracts upon notice of an intention not to perform; the unreasonable neglect to obtain license to do business standing for such notice.

The engagement in this case was evidently prospective, anticipating that the defendant would with reasonable industry proceed to obtain the legal permits to do insurance business in the specified territory. The contract was therefore of an executory nature, and the most that can be claimed for the failure of the defendant in respect of its neglect to obtain license is that it was notice of refusal to perform the undertaking. We doubt whether this much can be claimed for it under the facts in evidence, but, inasmuch as the defendant has not complained of the verdict, it is unnecessary to analyze the transaction to determine its accurate legal effect. The plaintiff then invokes the much-contested rule that where one of the parties to a contract of an executory character, before the time for performance, renounces it, or places himself in an attitude of impossibility of performance, the other may treat such action as a breach, and sue at once as for a breach of the entire contract, although the time when he might require performance had not yet arrived. This view rests upon the reasoning and precedent of the case of Hochster v. De la Tour, 2 El. & Bl. 678, and has never been approved or followed by the supreme court of the United States. All the intimations of that court are in opposition to such a rule.

Thus, in Smoot's Case, 15 Wall. 36–46, Mr. Justice Miller, speaking for the court, said:

"As between individuals, the impossibility which releases a man from the obligation to perform his contract must be a real impossibility, and not a mere inconvenience. And, while such an impossibility may release the party from liability to suit for nonperformance, it does not stand for performance, so as to enable the party to sue and recover as if he had performed."

In the subsequent case of Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, the disposition of the court, though not deciding the question, appears to be strongly in sympathy with the views of the supreme court of Massachusetts, so ably expressed in Daniels v. Newton, 114 Mass. 530, upon a careful consideration of the more prominent of the preceding cases. The views of the Massachusetts court in the case supra appear to me to be more consonant with reason and the spirit of the law, and would in this case preclude any recovery by the plaintiff, upon the idea of a recovery as for a breach of the entire contract.

What has been said upon this branch of the plaintiff's contention applies with equal force to his claim for damages down to the date of the trial. This additional observation may here be made: While the contract provided that either party might determine it upon 30 days' notice, this mode is not exclusive of all others, or, if exclusive, would not preclude either party from waiving it and accepting another in its stead, or as its equivalent. The plaintiff

chose to regard the failure of the defendant to qualify for business in the states allotted to him as a determination or final refusal to carry out the contract, and thereupon instituted his suit. This was virtually an acceptance of that mode of ending the contract, and a waiver of the notice expressed in the contract. Upon the other hand, if the defendant did not, by its dilatoriness, intend to break and terminate the agreement, the suit by the plaintiff was a declaration upon his part of a purpose of present and summary annulment, and, if accepted by defendant, he cannot complain.

Under no aspect of this case, in my opinion, was plaintiff entitled to an ampler rule for the assessment of damages than that given to the jury. If error was committed in the charge, it was against the defendant, not now complaining, and not the plaintiff. A review of the case has persuaded me that the plaintiff should have been nonsuited on the issue of a breach of the contract, to demonstrate which is now unnecessary, or, having proven the breach, his damages should have only been nominal.