LINDSAY H. CAVANAGH *vs*. PAUL D. CAVANAGH.

No. 91-P-288.

Essex. April 24, 1992. - September 3, 1992.

Present: KASS, PERRETTA, & GREENBERG, JJ.

*Contract*, Performance and breach, Construction of contract, Condition, Specific performance. *Divorce and Separation*, Separation agreement.

Where a "marital agreement" between the parties to a divorce proceeding provided that the wife would convey her interest in the marital home to the husband for $397,500, payable in three successive installments of $100,000 and a final installment of $97,500 "to be paid upon the sale of the marital home" by the husband, this court concluded that the quoted language did not create a condition precedent to the husband's duty to make the final payment, but, rather, that the husband was obligated to make the final payment within a reasonable time. [241-243]

Where, under a "marital agreement" between the parties to a divorce proceeding, the husband was required to make a payment to the wife, within a reasonable time, upon her conveyance to him of her interest in the marital home, the husband's repudiation of his obligation to make the payment entitled the wife to maintain an action for specific performance. [243]

Discussion of the doctrine of anticipatory repudiation, under which a party to a contract may bring an action for damages prior to the time performance is due, if the other party repudiates the contract. [243-244]

CIVIL ACTION commenced in the Superior Court Department on June 25, 1990.

The case was heard by *Peter F. Brady*, J., on motions for summary judgment.

*James Verner Moore* for Lindsay H. Cavanagh.

*Mary P. Harrington* for Paul D. Cavanagh.

GREENBERG, J. During the pendency of divorce proceedings, Lindsay and Paul Cavanagh signed a "Marital Agreement" which was incorporated into an October 6, 1986, judgment of divorce nisi and which, by the terms of the judgment, survived as an independent contract. At the heart of

this dispute is § 5(b) of the agreement, which provided that "Lindsay will convey all of her right, title and interest in the marital home to Paul . . . for the agreed sum of $397,500.00." [1] Their accord further provided that Paul was to make three successive payments of $100,000 to Lindsay over the ensuing year, which he has done,[2] and the balance of $97,500 was *to be paid upon the sale of the marital home by Paul*" (emphasis supplied). Lindsay was required to deliver a deed of her interest to Paul when the $300,000 had been paid, and, simultaneously, Paul was to give her a promissory note, without interest, for the unpaid balance. The exchange of deed and promissory note never took place.

We add other undisputed, relevant facts, drawn from the summary judgment materials. In July of 1989, after making the last of the three $100,000 payments, Paul renounced any intention of selling the marital home ("now or ever," he wrote to his former wife) or of making the final $97,500 payment. He insisted that the marital agreement only imposed a duty on him to make the final payment when and if he sold the marital home. On June 25, 1990, Lindsay brought this action in the Superior Court to enforce the marital agreement, alleging both breach of contract and fraud.[3] The parties filed cross-motions for summary judgment, and a judgment dismissing Lindsay's complaint was entered pursuant to Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974).

1. *Terms of the marital agreement.* Although no memorandum of decision accompanied the judge's order for entry of judgment, we may infer he agreed with Paul that selling the marital home operated as a condition precedent to Paul's duty to make the final payment. Lindsay contends, however, that Paul's duty to pay the $97,500 is absolute — not conditional — and that the agreement implicitly included a provi-

---

[1] The marital home had been appraised at $625,000 in 1986. The agreement also provided for the transfer from Paul to Lindsay of several shares of stock.

[2] It is unclear from the record before us whether Paul complied with the timetable set forth in the agreement.

[3] The complaint requested relief for the unpaid amount of $97,500, as well as any other relief deemed just and proper.

sion to provide a reasonable time within which Paul was obligated to perform.

Neither party posits that the contract is ambiguous, and, although it could have been better written, we agree that the language of the agreement is not ambiguous. What the legal effect of that language is presents a question of law and, thus, is suitable for judicial resolution. *Taylor* v. *Gowetz*, 339 Mass. 294, 300 (1959) (construing language of a separation agreement). See also *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 157 (1983), and cases cited.

The plain meaning of § 5(b) contemplates a straightforward exchange, by which Lindsay agreed to transfer her interest in the marital home to Paul for $397,500. We reject Paul's interpretation that the payment of $97,500 was conditioned exclusively upon his sale of the marital home. "[E]ven when words are used, which might be construed to be a condition in their ordinary sense, they shall not be so considered, if such construction is not consistent with the intent of the parties." *Malden Knitting Mills* v. *United States Rubber Co.*, 301 Mass. 229, 233 (1938), quoting from *Mill Dam Foundery* v. *Hovey*, 21 Pick. 417, 438 (1839).[4] A construction of the agreement whereby Paul would never have to make the final payment contravenes the basic provision of § 5(b) that "Paul . . . *will pay* [$397,500] to Lindsay" (emphasis supplied) for her interest in the marital home. When a contractual provision specifies that payment is due upon the occurrence of a contingency which is within the obligor's control, the general rule is that payment is to be made within a reasonable time. See *C.J. Hogan, Inc.* v. *Atlantic Corp.*, 332 Mass. 322, 328 (1955); *Ewell* v. *Landing*, 199 Md. 68, 71 (1952). See generally 3A Corbin, Contracts § 636 (1960);

---

[4]Even where the language of the agreement is not ambiguous on its face we may consider extrinsic evidence of the parties' intent which explicates, but does not contradict, its meaning in a particular context. *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 86 n.11 (1991). See also *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). Here, Lindsay's sworn affidavit describes how she believed that it was Paul's intention to sell the marital home and move to a new location. On this record, Paul never disputed this averment with any sworn-to statement.

Restatement (Second) of Contracts § 227 comment b (1979). We conclude that Paul was obligated to make the final payment within a reasonable time.

2. *The consequence of Paul's repudiation.* A basic proposition is that Lindsay may only maintain an action against Paul for breach of the marital agreement if he has failed to pay her within a reasonable time. What constitutes a reasonable time is ordinarily a question of fact, see *Charles River Park, Inc.* v. *Boston Redev. Authy.*, 28 Mass. App. Ct. 795, 814 (1990), and such a determination has not been made in this case. We need not decide what is a reasonable time according to our own judgment, see *C.J. Hogan, Inc.* v. *Atlantic Corp.*, 332 Mass. at 329, nor is there a need to remand the matter on this question, compare *Barclay* v. *DeVeau*, 384 Mass. 676, 684-686 (1981). Here, Paul's repudiation of his obligation to make the final payment permits a judgment in Lindsay's favor.

Outside of the commercial law context,[5] Massachusetts has not generally recognized the doctrine of anticipatory repudiation, which permits a party to a contract to bring an action for damages prior to the time performance is due if the other party repudiates. *Daniels* v. *Newton*, 114 Mass. 530 (1874). Compare *Nevins* v. *Ward*, 320 Mass. 70, 73 (1946). Although the *Daniels* decision itself has never been explicitly overruled, several exceptions to its holding have developed.[6] In *Collins* v. *Snow*, 218 Mass. 542, 545 (1914), the

---

[5]See G. L. c. 106, § 2-610, and the comments thereto.

[6]See Prance, Anticipatory Repudiation of Contracts: A Massachusetts Anomaly, 67 Mass. L. Rev. 30 (1982). Among the other exceptions noted in the article are (1) an actual breach accompanied by an anticipatory breach (see *Parker* v. *Russell*, 133 Mass. 74 [1882], and progeny); (2) an action for rescission at the time of a repudiation (see *Ballou* v. *Billings*, 136 Mass. 307 [1884]; *Gillis* v. *Bonelli-Adams Co.*, 284 Mass. 176 [1933]); and (3) similar to the equity exception invoked here, an action for quantum meruit (see *Johnson* v. *Starr*, 321 Mass. 566 [1947]). See also and compare *Petrangelo* v. *Pollard*, 356 Mass. 696, 702 (1970). The Prance article notes that Massachusetts is alone in not recognizing the doctrine of anticipatory repudiation. See also 4 Corbin, Contracts § 959 (1951); 11 Williston, Contracts § 1312 (3d ed. 1968); Restatement (Second) of Contracts § 250 (1979).

court held that, despite the rule of *Daniels* v. *Newton, supra,* and despite the fact that performance was not yet due, a suit in equity for breach of contract was maintainable when a party had repudiated its obligations. The exception was based on the premise that, in equity, relief can be given based upon events which occur after the commencement of the suit and "which grow out of the matters on which the [complaint] is founded." *Collins* v. *Snow, supra.* See and compare *Tucker* v. *Connors,* 342 Mass. 376, 383 (1961), in which the plaintiff buyer of land brought a suit for specific performance of the defendant seller's promise to convey before performance was due; in that case, *Daniels* v. *Newton, supra,* was held not to prevent the court from affirming and modifying an appropriately fashioned decree compelling conveyance of a parcel of land. Compare *Schilling* v. *Levin,* 328 Mass. 2, 6 (1951).

It is of no significance that Lindsay is, in the circumstances, the "seller" of her interest in the marital home and seeks a specific amount of money in return for that interest. A seller who is party to a contract for the conveyance of real estate may bring an action for specific performance. *Olszewski* v. *Sardynski,* 316 Mass. 715, 717 (1944). See Nolan, Equitable Remedies § 262 (1975). Cf. G. L. c. 214, § 1A. Lindsay's complaint, see note 3, *supra,* included a request for general relief, and a grant of specific performance of the marital agreement to her would not be inconsistent with her action for breach of the marital agreement. See *Powers, Inc.* v. *Wayside, Inc. of Falmouth,* 343 Mass. 686, 694 (1962). There is also no suggestion that any "countervailing equities" would prevent enforcement of the marital agreement. See *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976).

The portion of the judgment dismissing the plaintiff's claim for breach of contract is reversed.[7] A new judgment shall issue ordering the defendant to make payment to the plaintiff, within six months of the entry of the amended judgment, of $97,500, by certified or cashier's check, upon the

---

[7]Deciding as we do, we do not reach the fraud claim also raised by the complaint.

plaintiff's tender of a deed representing her interest in the marital home. See and compare *Tucker* v. *Connors*, 342 Mass. at 383, with *Limpus* v. *Armstrong*, 3 Mass. App. Ct. 19, 23 (1975).

*So ordered.*