**Padraic T. SPENCE, Plaintiff**

v.

**BERKSHIRE LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 07–30025–MAP.**

United States District Court,
D. Massachusetts.

June 13, 2008.

Edward K. Kimball, Berkshire Life Insurance Company, Pittsfield, MA, for Defendant.

Judith C. Knight, Law Office of Judith C. Knight, Great Barrington, MA, for Plaintiff.

### MEMORANDUM AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 10 & 17)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff Padraic T. Spence disputes the interpretation of a disability insurance pol-

icy provided by Defendant Berkshire Life Insurance Co. ("Berkshire").[1] He has filed this complaint to prevent Berkshire from following its plan to halt monthly indemnity payments on his policy in September 2008, arguing that the payments should continue until July 2010 and charging breach of contract (Count I) and a violation of Mass. Gen. Laws ch. 93A (Count II). The parties have brought cross-motions for summary judgment on both claims. (Dkt. Nos. 10, 17.) For the reasons stated below, Defendant's motion will be allowed and Plaintiff's motion will be denied.

### II. FACTS

Spence was born on April 28, 1943. He purchased a disability insurance policy from Berkshire on September 19, 1980, when he was 37 years old. As part of the purchase, he completed an application which, along with the policy itself, constituted the contract between the two parties. (Dkt. No. 1, Ex. 1, at 2 ("The policy and the application make up the entire contract.").) In filling out the application, Spence was given the choice of picking an indemnity period (defined in the policy as "the length of time for which a monthly indemnity is to be paid during any period of continuous total disability") of either a discrete number of months or until age sixty-five. (Id. at 6, 9.) Plaintiff opted for an indemnity period of 60 months.

The policy states that the monthly indemnity payments "will not be made ... for more than the maximum indemnity period during any such disability; nor will

---

1. Berkshire Life Insurance Co. no longer exists, having been dissolved by merger in July 2001. Its successor in interest is Guardian Life Insurance Company of America, which is litigating the case on behalf of named defendant Berkshire. (Dkt. No. 11, Rule 56.1 Statement of Undisputed Material Facts and Supporting Exhibits of the Def. ¶¶ 4–6.) For ease of reference, the court will call Defendant by its original name, Berkshire.

such payments be made beyond the policy anniversary that falls on or most nearly follows your sixty-fifth birthday." (*Id.* at 5.) The definition of maximum indemnity period provides that "[s]uch indemnity will not be paid beyond the policy anniversary that falls on or most nearly follows your sixty-fifth birthday, except as is provided in this policy." (*Id.*) If a policyholder's disability begins on or after his or her sixty-third birthday, the monthly indemnity payment "will not be made for more than 24 consecutive months (or for the maximum indemnity period, if less)." (*Id.*)

The policy allows for the continuation of benefits until age seventy-five on a limited basis. The relevant provision states that if the policyholder is employed full-time after the policy anniversary that falls on or follows his or her sixty-fifth birthday and continues to pay the relevant premiums, he or she may keep the policy in force for up to ten years. (*Id.* at 6.) This extension is more constrained than the benefits available before age sixty-five in that "the maximum indemnity period . . . in such event will be 24 months." (*Id.*)

In March of 2005, a month before he turned 63, Spence informed Berkshire that he had recently become fully disabled and sought his indemnity payments under the policy. Defendant, accepting the disability claim, began paying Plaintiff his monthly indemnity of $3000 around July 14, 2005 and has continued to do so.

Berkshire has informed Spence, however, that it will halt the monthly payments on the policy date falling closest to his sixty-fifth birthday—September 19, 2008. (Dkt. No. 19, Ex. 1.) Plaintiff meanwhile believes he should be covered for a full sixty months, until July 14, 2010. His counsel notified Berkshire of this understanding by letter in November 2005. (Dkt. No. 1, Ex. 3.) Defendant replied in December 2005 with a letter explaining

that it interpreted the policy to allow for payments only until September 19, 2008. (Dkt. No. 11, Ex. G.) Spence also sent Berkshire a demand letter in June 2006 pursuant to Mass. Gen. Laws chs. 93A and 176D, seeking confirmation that Defendant would pay out sixty months of coverage regardless of his age and alleging that Berkshire's December 2005 letter constituted a violation of Chapter 93A. (Dkt. No. 1, Ex. 4.)

On July 24, 2006, Berkshire responded by a letter reiterating its competing interpretation of the policy. (Dkt. No. 1, Ex. 5.) Plaintiff accordingly filed suit in Massachusetts state court seeking damages in the amount of $66,000 (the indemnity payments that would be paid between September 2008 and July 2010), treble damages, attorneys' fees and costs under Mass. Gen. Laws ch. 93A, § 2 and Mass. Gen. Laws ch. 176D, § 3, and any other relief the court might deem appropriate. (Dkt. No. 1, Compl. 3–4.) As noted above, Spence and Berkshire have now filed cross-motions for summary judgment, each arguing in favor of its own interpretation of Plaintiff's insurance policy. (Dkt. Nos. 10, 17.)

## III. *DISCUSSION*

### A. *Interpretation of the Policy.*

The interpretation of an insurance policy is a question of law for the court. *Fuller v. First Fin. Ins. Co.*, 448 Mass. 1, 858 N.E.2d 288, 291 (2006). Several principles guide the construction of an insurance contract:

> Like all contracts, insurance contracts are to be construed "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." . . . . "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accor-

dance with its terms."..... But, if the contract is ambiguous, "doubts as to the meaning of the words must be resolved against the insurance company that employed them and in favor of the insured."

*Cody v. Conn. Gen. Life Ins. Co.*, 387 Mass. 142, 439 N.E.2d 234, 237 (1982) (citations omitted).

■ There is no question that Plaintiff sincerely believes that, in choosing on his application to receive benefits for 60 months after becoming disabled rather than until he reached age sixty-five, he was excepting himself from the discontinuation of benefits at age-sixty five pursuant to the policy's statement that an "indemnity will not be paid beyond the policy anniversary that falls on or most nearly follows your sixty-fifth birthday, *except as provided in* this policy." (Dkt. No. 1, Ex. 1, at 6 (emphasis added).) Unfortunately, that interpretation of the contract is simply not reasonable when other, adjacent language is taken into account.

Most prominently, the explanation of "Total Disability Indemnity" conspicuously states that "[indemnity] payments will not be made ... for more than the maximum indemnity period during any such disability; *nor will such payments be* made beyond the policy anniversary that falls on or most nearly follows your sixty-fifth birthday." (Dkt. No. 1, Ex. 1, at 5 (emphasis added).) This disjunction indicates that the age cutoff is independent of the end of the maximum indemnity period. Thus, the choice that Spence made regarding the length of his indemnity period pertained only to the period for which he would receive payments prior to when he turned sixty-five, at which point the latter, separate provision relating to the age cutoff took effect.

Indeed, this is the only sensible interpretation of the contract. If the choice of an indemnity period that ended up running beyond a policyholder's sixty-fifth birthday overrode the cutoff at that age, then the provisions regarding the cutoff would be rendered superfluous. Under Plaintiff's interpretation, either the indemnity period would extend past age sixty-five without the cutoff applying, or the indemnity period would end before age sixty-five and the cutoff would never even kick in. Such a construction would run contrary to Massachusetts precedent disfavoring contract interpretations that make some provision of the contract "useless or inexplicable." *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158, 161 (1986) (*quoting Sherman v. Employers' Liab. Assurance Corp.,* 343 Mass. 354, 178 N.E.2d 864, 866–67 (1961)).

In addition to giving full effect to the language of the policy, Berkshire's construction also avoids adding in some kind of "hidden" exception to the discontinuation of benefits. The two exceptions to the age sixty-five cutoff that are acknowledged by Defendant are clearly outlined and described in detail by the policy. The provision regarding "Continuation of Limited Benefits to Age 75" fully outlines how a policyholder may extend coverage by paying premiums and remaining employed full time. (*Id.* at 6.) The discussion of the "Total Disability Indemnity" similarly explains that if a disability begins after an individual's sixty-third birthday, payment will not extend more than twenty-four months past the end of the elimination period (which is "the number of days past the start of each period of continuous total disability for which no monthly indemnity is to be paid"). (*Id.* at 5, 6.) There is no language, express or otherwise, indicating that the maximum indemnity period itself may be the basis of continuation of benefits past age sixty-five.

Overall, though Spence's misinterpretation of the policy is colorable, the court cannot deem it to be reasonable in light of the contract as a whole. Therefore Defendant is entitled as a matter of law to end his indemnity payments in September 2008 as scheduled.

## B. *Anticipatory Repudiation.*

■ Even if Spence could prevail on the merits, Count I would have to be dismissed as premature. Assuming it pursues its intended course, Berkshire will not actually halt its indemnity payments until September 19, 2008; up to now, it has performed all its obligations under the contract. (Dkt. No. 19, Ex. 1.) Count I, seeking damages for breach of the insurance contract before that breach has actually occurred, is therefore an impermissible cause of action under Massachusetts law. Although some jurisdictions allow claims based on the theory of anticipatory repudiation, *see* Restatement (Second) of Contracts § 250, cmt. a (1981), as a Massachusetts appeals court explained in *Cavanagh v. Cavanagh*, "[o]utside of the commercial law context, Massachusetts has not generally recognized the doctrine of anticipatory repudiation." 33 Mass.App.Ct. 240, 598 N.E.2d 677, 679 (1992) (*citing Daniels v. Newton*, 114 Mass. 530 (1874)). While there are a few exceptions to this general rule, such as where a party seeks specific performance or where the repudiation is accompanied by actual breach of the contract, none of those is applicable here. *See John Beaudette, Inc. v. Sentry Ins.*, 94 F.Supp.2d 77, 104 (D.Mass.1999); *Cavanagh*, 598 N.E.2d at 679. Additionally, though Spence's complaint seeks a remedy in the form of "any other relief this Court deems appropriate," not just damages, that broad request does not constitute a cognizable claim for declaratory relief. (Dkt. No. 1, Compl. 3.)

## C. *Chapter 93A Claim.*

Count II must also be dismissed. Spence has failed to show both any damage traceable to Berkshire's conduct and any dispute beyond a good faith disagreement regarding the interpretation of the contract at issue.

### 1. *Lack of Damages.*

■ Mass. Gen. Laws ch. 93A, § 9(1) expressly permits actions to proceed only where an individual "has been injured" by conduct in violation of section 2. *See also Hershenow v. Enter. Rent–A–Car Co. of Boston*, 445 Mass. 790, 797, 840 N.E.2d 526 (2006). As discussed above with respect to Count I, Plaintiff has received all of his scheduled indemnity payments, and thus cannot demonstrate any current harm.

### 2. *Good Faith Dispute.*

■ Moreover, Chapter 93A does not apply to a situation such as this, where the parties are merely engaged in a good faith dispute regarding the meaning of a contract. Section 2 of chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 176D, § 3 specifies that in the insurance business, such illegal acts may include, *inter alia*, making misrepresentations regarding the benefits or terms of an insurance policy, disseminating advertising containing untrue, deceptive, or misleading statements, or failing promptly and fairly to settle claims in which liability has become reasonably clear. "However, a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Duclersaint v. Fed. National Mortgage Ass'n*, 427 Mass. 809, 696 N.E.2d 536, 540 (1998) (holding that "genuine difference of opinion" regarding existence of a surplus after

a foreclosure sale did not entail "unethical, immoral, oppressive, or unscrupulous" conduct that could form the basis of a Chapter 93A claim).

It is clear that at its core this is a non-actionable, garden-variety contract dispute. *Cf. Graham v. Malone Freight Lines,* 948 F.Supp. 1124, 1139 (D.Mass. 1996) (ruling that 93A claim was invalid where insurer had "good faith basis" for refusing to settle claim "since liability was not reasonably clear"); *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 390 N.E.2d 243, 253 (1979) (finding no violation of Chapter 93A where party to a contract "merely sought to enforce what it reasonably believes to be" the terms of the agreement); *see also Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 55–56 (1st Cir.Mass.1998) (contrasting mere breach of contract with actionable conduct of deliberately disregarding known contractual obligations for the purpose of securing benefits for breaching party). Given that the court has endorsed Berkshire's interpretation of the policy, its opposition to Plaintiff's suit can only be considered a reasonable course of action, and certainly not a violation of Chapter 93A. Furthermore, the language of the contract is not deceptive simply because the parties differ over its interpretation, and the terms of the contract are not substantively unfair.

## IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 10) is hereby ALLOWED and Plaintiff's Cross Motion for Summary Judgment (Dkt. No. 17) is hereby DENIED. The clerk is ordered to enter judgment for Defendant.

It is So Ordered.