VINCENT PETRANGELO vs. ROBERT W. POLLARD &
another, trustees.

Hampden.   December 3, 1969. — February 3, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

Contract, Building contract, Performance and breach, Legality.  Prac-
tice, Civil, Exceptions: what questions open.

In an action of contract to recover for labor and materials furnished by
the plaintiff in constructing a shopping center for the defendants pur-
suant to an agreement providing for instalment payments as the work
progressed, evidence warranted findings that until the plaintiff ter-
minated the agreement he had furnished all the materials and done
in a good and workmanlike manner all the work then required, that
the defendants were then in default in their payments, that the non-
payment was a breach going to the root of the agreement, and that,
after many requests by the plaintiff for payments and many state-
ments by the defendants of inability to pay, the plaintiff was legally en-
titled to terminate the agreement and recover the balance due him
from the defendants on an account annexed.  [700–701]
An alleged defence to an action which was not pleaded by the defendants
in their answer and not raised by them at the trial was not open in
this court upon the plaintiff's exceptions to entry of verdicts for the
defendants under leave reserved.  [702]
As between the owners of a building and the contractor who constructed
it, any illegality in performing the early stages of construction before
the issuance of a municipal building permit did not survive issuance
of the permit where it appeared that the owners had allowed the con-
tractor to proceed knowing that he had no permit and did not raise
the question of illegality when paying for such performance.  [702]

CONTRACT.   Writ in the Superior Court dated Decem-
ber 24, 1965.

The action was tried before Brogna, J.

Louis Kerlinsky for the plaintiff.

Robert J. Sherer (Joseph D. Cronin with him) for the de-
fendants.

QUIRICO, J.   This is an action in contract in which the
plaintiff seeks to recover $48,394.52 on each of four counts
on an account annexed for labor and materials furnished in

the construction of a shopping center on land of the defendants. All counts are for the same cause of action.

The jury returned a verdict for the plaintiff for $48,394.52 on each of the four counts. The verdicts were recorded under G. L. c. 231, § 120; and later upon motion the trial judge entered verdicts for the defendants on all counts. The propriety of this action by the judge is the only question before us.

"The test to determine the correctness of the action of the trial judge in ordering the entry of a verdict for a defendant under leave reserved is whether the evidence in its aspect most favorable to the plaintiff could rightly be found to support the contentions essential to the maintenance of his cause of action." *Holton* v. *Shepard,* 291 Mass. 513, 515. *Thurlow* v. *Welch,* 305 Mass. 220, 221. *Brightman* v. *Blanchette,* 307 Mass. 584, 589. That is the same test which is applied in the case of a motion for a directed verdict. *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196. *O'Brien* v. *Myers,* 354 Mass. 131, 132. In the application of this test, "the plaintiff is entitled to have the evidence considered in its aspect most favorable to it from what ever source it comes." *Interstate Busses Corp.* v. *McKenna,* 329 Mass. 1, 2. *Riggs* v. *Christie,* 342 Mass. 402, 403. Pursuant to this rule, the evidence in its aspect most favorable to the plaintiff is stated in the following numbered paragraphs, omitting therefrom whatever tends to contradict that aspect or to support the contentions of the defendants on disputed facts. *Adams* v. *Herbert,* 345 Mass. 588, 589.

1. On August 31, 1965,[1] the parties signed an agreement under which the plaintiff was to furnish all the materials and perform all the work necessary to construct a certain building, parking area and related facilities for a shopping center for the total price of $130,000.

2. The agreement required the defendants to pay to the plaintiff "[o]n or about the 15th and 30th day of each month 100 per cent of the value, based on the Contract

---

[1] The year of all other dates in this opinion is 1965.

prices of labor and materials incorporated in the work as estimated by the owner less the aggregate of previous payments." It also provided that until fifty per cent of the total price was paid the defendants could deduct five per cent from each payment and retain it until after the completion of the construction. After the work was begun on September 7 the plaintiff submitted the following written requests for payments: (a) a request on October 7 for $11,000 for items of site preparation, excavation, footings and exterior block walls; (b) a request on October 25 for $9,300 for items of brick work, block work, insulation and excavating; and (c) a request on November 29 for $24,526 for items of excavating, masonry, painting, plumbing, drainage, mechanical room and stone removal. The total of these requests was $44,826. The defendants paid the plaintiff a total of $23,332.45 on these written requests in the following instalments: $19,500 on November 3, $2,000 on November 17, and $1,832.45 on December 3. On or about October 1 the plaintiff asked the defendant Pollard for a payment and Pollard told him that arrangements for their mortgage had not been completed and that there was no money available at that time. The defendants told the plaintiff the same thing when he submitted each of his written requests on October 7, October 25 and November 29. He kept asking them for money until he received the three payments listed above. [2]

3. The defendants made three additional payments with-

[2] Between the plaintiff's written requests of October 25 and November 29, he submitted four other written requests as follows: request on November 9 for $22,500, request on November 16 for $31,651, request on November 18 for $30,701, and request on November 29 (first of two on that date) for $28,036. After the request of November 9 the defendants told him that there was no money and there would be none until they arranged their mortgage financing, and they asked him to file future requests on printed forms provided for the purpose. After the request of November 16 they asked him to reduce the request to $30,701 which he did on November 18. After the latter request they again told him the mortgage financing was not completed and he would have to wait. They also asked him to reduce his request further. He did so by filing the first of two requests on November 29 in the amount of $28,036. They again told him he would have to wait for his money, and to reduce his request further. He filed a second request on that same date for $24,526. Each of the last four requests superseded the one immediately preceding it. Thus we deal only with the second request filed on November 29 for $24,526.

out requiring the plaintiff to submit written requests therefor. Each was made directly to a subcontractor of the plaintiff as the result of an oral request of the plaintiff. The payments were the following: $2,500 to the roofing subcontractor on November 24, $16,035 to the structural steel subcontractor on December 3, and $4,567.50 to the electrical subcontractor on December 3, for a total of $23,102.50. In each instance the subcontractor had furnished the materials or done the work for which he was paid. The items covered by these three payments were not included in any of the three written requests for payments submitted by the plaintiff.

4. The plaintiff continued to perform under the agreement after December 3. The work after that date included the paving of the parking area by a subcontractor at an expense of about $11,000. Between December 3 and December 8 the plaintiff asked the defendants for more money to go on with the job and they said they would see what they could do. When the paving of the parking area was substantially completed on December 8, he and his subcontractor spoke to the defendants about payment for that work. They said they would give the subcontractor a check for that work but they never did so.

5. On December 12 the plaintiff told the defendant Pollard that on the fifteenth of that month he would need money to meet payroll and other expenses on the job. The defendant told him that the final arrangements for the mortgage had been completed, but that there would be no money available for him. In fact the mortgage arrangements had not been completed up to the date of the trial of this case. After that talk the plaintiff conferred with his attorney who sent the defendants a letter on December 16 telling them that they had broken the agreement, that the plaintiff was therefore terminating it, and that he would hold them liable for damages. On that date the plaintiff terminated performance under the agreement, and he removed all of his equipment from the premises. He received no payments after December 3.

6. At all times prior to December 16 both the plaintiff's work and the materials furnished under the agreement were approved by the defendants. All of the work was done in a good and workmanlike manner.

7. The fair and reasonable value of the labor and materials furnished by the plaintiff through December 16, plus fair and reasonable allowances for overhead, insurance and profit, amounted to $94,830.17. The plaintiff received payments from the defendants in the total sum of $46,434.95.[3] The balance due him was $48,394.52.

Thus, on the evidence before them, the jury could find and conclude:

(a) The plaintiff had furnished all of the materials and done all of the work required of him under the agreement until the time he terminated it on December 16; and he had performed in a good and workmanlike manner to that date;

(b) After giving effect to all the payments made by the defendants to the plaintiff and his subcontractors, they still owed him $18,243.55 on his written requests for payments submitted through December 3;[4] and they paid him nothing thereafter;

(c) The reason for the defendants' failure to pay the plaintiff the balance of $18,243.55 due him on his written requests on December 3 was their failure to obtain mortgage financing on their project; and such nonpayment was a

---

[3] The total payments are shown by the record as $46,434.95 on page 2, and as $46,435.65 on page 10. The discrepancy is not explained.

[4] The jury could find the account between the parties to stand as follows after giving effect to the payments through December 3:

*Payments due plaintiffs:*

| | | |
|---|---|---|
| On three written requests for payments . | $44,826.00 | |
| On three oral requests for payments . . | 23,102.50 | $67,928.50 |
| Less 5% deducted and retained from first $65,000 . . | | 3,250.00 |
| Net amount due plaintiff on December 3 . . . . | | 64,678.50 |

*Payments by defendants:*

| | | |
|---|---|---|
| On three written requests for payments . | $23,332.45 | |
| On three oral requests for payments . . | 23,102.50 | 46,434.95 |
| Balance due plaintiff at end of December 3 . . . | | $18,243.55 |

breach going to the root of the agreement and entitling the plaintiff to terminate it on December 16. *National Mach. & Tool Co. v. Standard Shoe Mach. Co.* 181 Mass. 275, 279. *Hughes v. Rendle Corp.* 271 Mass. 208, 212. *Bucholz v. Green Bros. Co.* 272 Mass. 49, 52–53. .

The defendants argue that since their total payments of $46,434.95 were in excess of the $44,826 total of the plaintiff's three written requests for payments, the jury could not find them guilty of a breach for nonpayment. This argument is without merit. The jury could find that the defendants paid only $23,332.45 on account of the written requests, and that the balance of their payments went directly to subcontractors whose work, labor and materials were not included in the written requests. It is not clear that the defendants had the right to require the plaintiff to submit written requests for payments but, if they did, they waived that right as to the payments which they made directly to the plaintiff's subcontractors at his verbal requests. The defendants were not asked to pay twice for the same items. They cannot now insist that the payments which they made directly to subcontractors be applied to the plaintiff's written requests for payment for totally different items.

There was additional evidence from which the jury could find that the plaintiff was legally entitled to terminate the agreement when he did. On December 12 one of the defendants told him that there would be no money available for him on December 15. This came after many requests by him for payments, and many statements by the defendants of inability to pay. It followed by several days the unkept promise by the defendants to pay the paving subcontractor about $11,000 for work then completed. The jury could find that the combination of those facts entitled the plaintiff to terminate the agreement. He did not have to continue to perform after that and run the risk that he would not be paid. This case is governed by the rule of law stated in Restatement: Contracts, § 280 (1), in these words: "Where there are promises for an agreed exchange, if one promisor

manifests to the other that he cannot or will not substantially perform his promise, or that, though able to do so, he doubts whether he will substantially perform it, and the statement is not conditional on the existence of facts that would justify a failure to perform, and there are no such facts, the other party is justified in changing his position, and if he makes a material change of position he is discharged from the duty of performing his promise." That rule was applied in *Nevins* v. *Ward*, 320 Mass. 70, 73. See also *Earnshaw* v. *Whittemore*, 194 Mass. 187, 192; *Ragan* v. *Dyer*, 272 Mass. 495, 498; *Johnson* v. *Starr*, 321 Mass. 566, 570; *Sztramski* v. *Spinale*, 332 Mass. 500; *Gordon* v. *Southgate Park Corp.* 341 Mass. 534, 537; *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 554; Williston, Contracts (3d ed.) § 875. On December 12 the defendants wrongfully attempted to impose on the plaintiff the risk of not being paid if he performed further. He was in no way responsible for the situation, and he could decline to be placed in that position by terminating the agreement. The words and actions of the defendants amounted to more than a mere anticipatory breach for which recovery would be denied under the rule of *Daniels* v. *Newton*, 114 Mass. 530.

The defendants argued before this court that whatever work the plaintiff did before he obtained the building permit on November 3 after several months delay was done illegally. They did not plead this defence in their answer, and they did not raise it at the trial. It is not open to them now. *O'Brien* v. *Shea*, 208 Mass. 528, 535. Moreover, if there was any illegality in the early stages of the plaintiff's performance, it did not survive the issuance of the building permit on November 3. The defendants allowed the plaintiff to proceed knowing he had no building permit, and they never raised that question when they paid him on November 3 for performance before he had the permit. On the facts of this case we do not allow this question to be raised for the first time when the case reaches this court. *Morello* v. *Levakis*, 293 Mass. 450, 452. *Barsky* v. *Hansen*, 311 Mass. 14, 17. *Gleason* v. *Mann*, 312 Mass. 420, 422. *National Dev. Co.* v.

*Gray*, 316 Mass. 240, 250–251. *Staples Coal Co.* v. *Ucello*, 333 Mass. 464, 468.

The briefs on both sides refer to an alleged breach of a warranty made by the defendants to the plaintiff with reference to the sanitary disposal system. There is nothing in the record to show that this question is properly before us. We take no action on it. *Nash* v. *New England Mut. Life Ins. Co.* 127 Mass. 91, 98. *Holiver* v. *Department of Pub. Works*, 333 Mass. 18, 20. *American Discount Corp.* v. *Kaitz*, 348 Mass. 706, 712.

We hold that the evidence in its aspect most favorable to the plaintiff could rightly be found by the jury to support the contentions essential to the maintenance of his cause of action. It follows therefore that the plaintiff's exceptions are sustained. The verdicts for the defendants under leave reserved must be set aside and the original verdicts for the plaintiff are to stand.

*So ordered.*