MARK BOMBARA INTERIOR DESIGN *vs.* RICHARD BOWLER.

Middlesex. February 7, 2006. - March 30, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Performance and breach. *Damages,* Breach of contract, Interest. *Interest. Consumer Protection Act,* Availability of remedy, Unfair or deceptive act.

In a civil action, the judge did not err in finding that the defendant's refusal to pay the plaintiff's interim invoice constituted a breach of contract that justified the plaintiff's refusal to perform further, where, under the circumstances, the defendant had wrongfully attempted to impose on the plaintiff the risk of not being paid if he performed further. [417-418]

The judge in a civil action alleging breach of contract did not err in awarding interest on a loan that the plaintiff obtained to pay for certain items that the defendant had approved for purchase and for certain other costs, where the interest constituted part of the damages, not interest on the judgment. [418]

In a civil action arising from the plaintiff's termination of a contract with the defendant after the defendant had refused to pay a particular invoice, the judge erred in concluding, as a matter of law, that the plaintiff, an interior designer, was not a contractor within the meaning of G. L. c. 142A, § 1, where the plaintiff's testimony and his complaint demonstrated that he regularly was engaged in the business of undertaking residential contracting work, and the fact that he did not hold himself out as a contractor was immaterial. [418-421]

CIVIL ACTION commenced in the Superior Court Department on November 3, 1998.

The case was heard by *Jeffrey A. Locke,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John N. Flanagan* for the defendant.

*Colleen C. Cook* (*Sarah M. Knoff* with her) for the plaintiff.

SPINA, J. After a jury-waived trial a judge in the Superior Court awarded to the plaintiff, a sole proprietorship owned and operated by Mark Bombara, damages in the amount of $22,965.38 plus interest in the amount of $10,900.98 for interior design and home renovation services provided to the defendant,

Richard Bowler, pursuant to the terms of a written contract. The judge found against Bowler on his counterclaim, which alleged (1) breach of contract for failure to complete the project within a $75,000 budget and within six weeks from the commencement of work; (2) violation of G. L. c. 93A, § 2, and G. L. c. 142A, § 17, for (a) Bombara's failure to disclose that he was not a contractor registered under G. L. c. 142A, § 9, (b) Bombara's failure to provide a written contract that complied with G. L. c. 142A, § 2, and (c) Bombara's failure to complete the project without excuse; and (3) emotional distress.

On appeal, Bowler asserts error in the judge's ruling that Bowler's refusal to pay Bombara's interim invoice constituted a breach of contract that warranted Bombara's abandonment of the project; the judge's award of interest in the amount of $3,000, which Bowler alleges to be in violation of G. L. c. 231, § 6C; and the judge's ruling that Bombara was not a contractor within the meaning of G. L. c. 142A, § 1. We affirm the judge's rulings on Bombara's complaint but reverse the judgment and remand for further proceedings on the counts of Bowler's counterclaim that allege violations of G. L. c. 142A and G. L. c. 93A.

1. *Background.* We summarize the judge's findings of fact, supplemented with information from exhibits relied on by the judge. Bowler owned a condominium unit in the Back Bay neighborhood of Boston. In the fall of 1997, he decided to hire a professional decorator or designer to decorate and renovate the unit to achieve a sleek and stylish look. Bombara was highly recommended as an interior designer.

The parties had several conversations and a site visit. Bowler described his vision for the unit and explained that he wanted someone who could handle all the details necessary to complete the project. Bombara represented that his forte was high-end redesign projects and that he could handle the work comfortably for Bowler.

The parties executed a written agreement on January 15, 1998. The agreement provided that the "Designer" would create a design for the project including "floor plans, lighting plans, furniture layouts, color schemes [and] specifications . . . o fix and describe the size and character of the Project. The

Designer [would] then provide a visual presentation to communicate the desired results of the Project. Upon approval, the Designer [would] place all orders on the Client's behalf for merchandise, materials and labor. All effort [would] be made to achieve a timely delivery and installation." The agreement did not specify a budget or a time period for completion of the project.

The agreement also provided that Bombara would be compensated at the rate of thirty per cent above the net cost of all goods and services. A fifty per cent deposit was required on each item before ordering, and the remaining fifty per cent, plus shipping and storage, would be due upon installation and presentation of Bombara's invoice. An additional fee of one hundred dollars per hour would be due for "architectural drawings and/or details."

Bombara prepared drawings depicting improvements, colors, furniture, fabrics, tile, bathroom fixtures, and lighting for Bowler's approval. In April, 1998, Bombara presented Bowler with written cost estimates of approximately $73,000 for furniture that Bowler expressed an interest in purchasing. Bowler authorized expenditures of $20,000 at that time. No item was ordered or installed without Bowler's prior approval.

The parties agreed that renovations would be done in two phases. The first phase involved renovations to the master bedroom and bath; the second phase covered renovations to the front entry, the living and dining area, the study, and the second bathroom.

Significant construction work was required, and Bowler emphasized that he did not want to deal with contractors or subcontractors. Bombara assumed responsibility for hiring, scheduling, and supervising laborers. Bowler insisted that construction be completed without delay. Bombara estimated construction would take five to six weeks.

Demolition of the master bedroom and bath began in July, 1998, but it was not completed until October, 1998, due to delays caused by several occurrences: either Bombara or the crew he hired failed to obtain a building permit; the crew that Bombara hired initially walked off the job after a few days, and it took several weeks to secure a replacement crew; a change

order that Bowler requested caused a delay of several weeks to obtain different bathroom fixtures; and the grout used in the master bath required an extended drying time. On October 8, 1998, after phase one was substantially completed, Bombara presented Bowler with an invoice for $52,489.56 that included slightly more than $20,000 in labor and construction materials for the master bedroom and bath. It also included the cost of carpeting and furniture that Bowler had approved for phase two of the project. Bowler had advanced $32,500, leaving a balance of $19,989.56 on the October 8 invoice.

At about the same time, Bombara hired FBN Construction Co. (FBN) to do the work for phase two of the project. FBN had done renovation work on other units in the building and had the approval of building management. FBN submitted a construction estimate of $69,375. Bombara concluded that the estimate was too high and reduced the scope of the work FBN was to perform. He decided to hire others to complete other aspects of the work. FBN submitted a revised estimate of $36,450.

Relations between Bombara and Bowler deteriorated beyond repair. Bowler insisted he expected that the project was to cost no more than $75,000. He demanded Bombara waive his thirty per cent design fee plus pay $20,000 toward the cost of completing the project. Bombara demanded the balance due on his October 8, 1998, invoice. Bowler told Bombara to sue him. As a result, Bombara ceased work on the project.

Bowler hired FBN to finish the renovations. FBN revised its estimate to $61,397.50 to perform all necessary work under Bombara's plans. Bowler made changes that resulted in total payments to FBN in the amount of $96,000 and a final project cost of $137,800.

The judge ruled that Bowler's refusal to pay the October 8, 1998, interim invoice constituted a breach of contract that justified Bombara's refusal to perform further. The judge calculated damages by subtracting from the balance on the invoice the sum of $4,631.50, which represented fifty per cent of the cost of some furniture for phase two that Bowler had paid directly to a supplier, leaving a balance of $15,350.06 for goods and services. To this the judge added $4,607.32 for the unpaid por-

tion of Bombara's thirty per cent commission, and $3,000 in interest on a loan Bombara obtained to cover the cost of items purchased on behalf of Bowler. The total award of damages was $22,965.38. As mentioned, the judge awarded Bowler nothing on his counterclaim. Bowler appealed, and we transferred the case here on our own motion.

2. *Breach of contract.* Bowler argues that the finding that his refusal to pay the October 8, 1998, invoice constituted a breach of the contract is clearly erroneous. He reasons that the invoice includes $21,230.49 in furniture, hardware, and fixtures that had not yet been installed, and therefore was not yet owing under the contract. He further suggests that because this sum exceeds the amount the judge found outstanding under the invoice for items that Bowler had approved and that had been ordered, i.e., $15,358.06, he could not be in breach of the contract.

The argument is flawed. First, Bowler was obligated under the contract to pay fifty per cent of the cost of any furniture, hardware, or fixtures that he approved before Bombara ordered the item. Installation only went to whether the full amount was owed. Bowler owed fifty per cent of the invoice price of the items in question at the time of presentation of the invoice because he had approved them and they had been ordered. Second, as to the excess amount aspect of his argument, even with the credit for the money Bowler paid directly to a supplier, he still would have owed money for ordered items shown on the October 8, 1998, invoice at the time it was presented to him.

Bowler's refusal to pay amounts due Bombara for items that had been ordered, as well as for labor and materials that had been provided pursuant to the contract, justified Bombara's termination of the contract. See *Petrangelo v. Pollard*, 356 Mass. 696, 700-701 (1970). Moreover, Bowler's demand that Bombara waive his thirty per cent fee and pay him $20,000 is a manifestation of his intention to pay no other amounts that would become due and payable under the contract once the cost of the project exceeded $75,000,[1] thereby "wrongfully attempt-[ing] to impose on [Bombara] the risk of not being paid if he

[1]Bowler has abandoned his claim at trial that the written agreement had been modified by a subsequent oral agreement to complete the project within

performed further." *Id.* at 702. Bombara was justified in refusing to perform further under the contract and he was entitled to be paid for items and labor provided under the contract. There was no error.

3. *Interest under G. L. c. 231, § 6C.* Bowler argues that G. L. c. 231, § 6C, does not authorize payment of interest on damages incurred after this action commenced, but only payment of interest from the date damages are actually incurred. He refers here to $3,000 in interest that Bombara paid on a loan he obtained to pay for the items Bowler had approved for purchase, as well as for construction materials and labor.

The $3,000 is not interest contemplated by G. L. c. 231, § 6C, namely, interest on the judgment, but rather was awarded as a measure of damages. There was no objection to the testimony about the interest on the loan at the time it was admitted in evidence, and there is nothing in the record on appeal indicating that Bowler argued below that such interest was not a proper measure of damages.

Bowler also contends that there was insufficient evidence that Bombara had obtained a loan for the purpose described in his testimony, or that he paid any interest. The record is silent as to whether the sufficiency of the evidence of this aspect of Bombara's damages specifically had been challenged at trial by a motion under Mass. R. Civ. P. 41 (b) (2), 365 Mass. 803 (1974), or otherwise. The issue is deemed waived.[2]

4. *Counterclaim.* Bowler argues that the judge erroneously

six weeks, and at a cost of not more than $75,000. The judge found that there was no oral agreement to modify the contract, and that the terms in issue were nothing more than a hope of Bowler's. The judge based his findings on the credibility of the witnesses, as well as on the circumstances. In particular, he found that the cost of the top-end furniture, fixtures, and imported tile and granite counter tops that Bowler approved was inconsistent with a $75,000 budget for a project that also involved labor, construction materials, and Bombara's thirty per cent commission.

[2]Bowler does not argue that the finding was clearly erroneous. See Mass. R. Civ. P. 52 (a), 365 Mass 816 (1974). Although this issue also has been waived, we note that there was uncontroverted testimony from Bombara on the point, including the fact of the loan and the payment of interest, so there was at least some evidence on the issue, and the judge's finding cannot be said to be clearly erroneous. Cf. *Little* v. *Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970) (applying plain error standard where motion for directed verdict not filed).

concluded that because Bombara neither held himself out as a contractor nor was, as a matter of law, a contractor as defined in G. L. c. 142A, § 1,[3] he was not liable under G. L. c. 142A, § 2,[4] for failing to submit a prescribed contract, or under G. L. c. 142A, § 17,[5] for failing to disclose that he was not a registered contractor or failing to complete the project without excuse. We agree.

[3]General Laws c. 142A, § 1, defines "[c]ontractor" as "any person who owns or operates a contracting business who, through himself or others, undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid for, residential contracting work."

The statute defines "[r]esidential contracting" as "the reconstruction, alteration, renovation, repair, modernization, conversion, improvement, removal, or demolition, or the construction of an addition to any pre-existing owner occupied building containing at least one but not more than four dwelling units, which building or portion thereof is used or designed to be used as a residence or dwelling unit, or to structures which are adjacent to such residence or building."

[4]General Laws c. 142A, § 2 (a), states: "Every agreement to perform residential contracting services in an amount in excess of one thousand dollars shall be in writing and shall include the following documents and information:

"   . . .

"(3) the date on which the work under the contract is scheduled to begin and the date on which said work is scheduled to be substantially completed;

"   . . .

"(5) the total amount agreed to be paid for the work to be performed under said contract;

"(6) a time schedule of payments . . . . No final payment shall be demanded until the contract is completed to the satisfaction of the parties thereto;

"   . . .

"(8) there shall be a clear and conspicuous notice appearing in the contract:

"that all contractors and subcontractors must be registered by the administrator [chief administrator of the board of building regulations and standards, an agency within the executive office of public safety] and that any inquiries about a contractor or subcontractor relating to a registration should be directed to the administrator;

"of the registration number of the contractor or subcontractor[.]

"   . . .

"Contracts which fail to comply with the requirements of this section shall not be invalid solely because of noncompliance."

[5]General Laws c. 142A, § 17, enumerates acts that are prohibited by contractors or subcontractors, including:

"(1) operating without a certificate of registration issued by the administrator;

Bombara testified that the contract Bowler executed on January 15, 1998, which provided that Bombara would "place all orders . . . for . . . material and labor," was Bombara's standard contract. He further testified that he selected all the plumbers, electricians, tilers, stone cutters, painters, carpet installers, and carpenters who were used on phase one of the project, and that with the exception of the replacement crew for demolition and carpentry work, he had used all of the subcontractors on other projects. Bombara acknowledged that his arrangement for and use of subcontractors on this project was no different from what he had done in other projects that he had worked on, both before and since the Bowler project. Bombara's own testimony indicates that he is a "contractor" as that term is defined in G. L. c. 142A, § 1. That is, Bombara, "through himself or others, undertakes . . . residential contracting work." G. L. c. 142A, § 1. Bombara's complaint alleges that he provides "interior decorating and home improvement services," that he "assisted Bowler in . . . obtaining home improvement work," and that he "acted as Bowler's general contractor for the work performed on his home." He further alleges that Bowler owed him monies for "furnishings and construction."

It is immaterial that he does not hold himself out as a contractor, or that he describes his studio as that of an interior designer, as the judge found and reasoned. Bombara regularly is engaged in the business of undertaking residential contracting work as defined in G. L. c. 142A, § 1 ("reconstruction, alteration, renovation, repair, modernization, conversion, improvement, removal, or demolition"). It also is immaterial that the work is

---

"(2) abandoning or failing to perform, without justification, any contract or project engaged in or undertaken by a registered contractor or subcontractor, or deviating from or disregarding plans or specifications in any material respect without the consent of the owner;

" . . .

"(16) demanding or receiving payment in violation of [G. L. c. 142A, § 2 (*a*) (6)];

"(17) violating any other provision of this chapter.

" . . .

"Violations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of [G. L. c. 93A]."

undertaken as an adjunct to, ancillary to, or incidental to, his interior design work. The statute does not require that residential contracting work be the exclusive or primary business of a contractor. Bombara regularly undertakes this kind of work, and that makes him a "contractor" within the meaning of G. L. c. 142A, § 1.

The statute exempts certain persons from its registration requirements, including, but not limited to, persons licensed under other statutes, such as electricians, plumbers, and architects. See G. L. c. 142A, § 14. Interior designers, who are not licensed, are not among those persons exempted from registration. The statute also exempts "persons dealing in the sale of goods or materials who neither arrange to perform nor perform directly or indirectly any work or labor in connection with the installation of or application of the goods or materials." *Id.* The statute makes clear that it is not Bombara's design work that requires his registration as a contractor under G. L. c. 142A, § 9, but rather the fact that he regularly undertakes residential contracting work.

The legislative history of G. L. c. 142A is consistent with our conclusion. Senate and House versions of bills that eventually led to the enactment of G. L. c. 142A contained exemptions from registration for interior decorators, but this exemption was not incorporated into the final bill. See 1991 Senate Doc. No. 317, § 13 (i); 1991 House Doc. No. 2831, § 13 (i); 1991 House Doc. No. 4133, § 13 (j) (ii). Even interior decorators may undertake work that may require them to register as contractors under G. L. c. 142A.

We hold that it was error to conclude that, as a matter of law, Bombara was not a contractor within the meaning of G. L. c. 142A, § 1.

The dismissal of counts 3, 4, and 5 of Bowler's counterclaim, alleging violations of G. L. c. 142A and G. L. c. 93A, was error. The rulings as to the finding of a breach of contract and the award of damages on Bombara's complaint are affirmed, but the judgment is reversed and the matter is remanded for further proceedings on counts 3, 4, and 5 of Bowler's counterclaim.

*So ordered.*