Scott C. Pedersen *vs.* Julie Klare.

No. 08-P-1327.

Worcester. May 5, 2009. - July 23, 2009.

Present: Lenk, Dreben, & Hanlon, JJ.

*Divorce and Separation,* Visitation. *Minor,* Visitation rights. *Contempt.*

A Probate and Family Court judge erred in finding the mother in contempt of
    visitation provisions of the parties' divorce judgment, where the writing of
    a letter in which the mother's counsel expressed the mother's arguably
    reasonable concerns about a visit that the father planned for the parties'
    children, and inviting a response that apparently was never made, did not
    constitute clear and undoubted disobedience of a clear and unequivocal
    command regarding visitation [697-699]; and where, in an expedited
    proceeding, the judge did not hear any evidence regarding the mother's al-
    leged interference with the father's communication with the children via
    telephone other than representations made by the father's counsel, and the
    mother did not waive an evidentiary hearing on this point [699-700].

Complaint for divorce filed in the Worcester Division of the
Probate and Family Court Department on January 3, 2006.

A complaint for contempt, filed on December 11, 2007, was
heard by *Susan D. Ricci,* J.

*Christine D. Anthony* for the defendant.
*James J. Richards* for the plaintiff.

Lenk, J. The parties, parents of four daughters between the
ages of five and twelve at the relevant time, were divorced in
Massachusetts on December 20, 2006. The divorce judgment
incorporated their settlement agreement, which survived except
as to the provisions, pertinent here,[1] relating to the children;

---

[1]The provisions of the agreement pertinent to the matter before us are as
follows:

"2. *Visitation.* . . .

"(a) *Summer Visitation.* Each summer, the Children shall visit with
the [father] for four (4) weeks. In light of [the youngest child's] age,

those provisions merged into the judgment. The parents share legal custody, and the mother — who moved with the children to Georgia at the beginning of 2007 — has physical custody of the children. The father has the right to eight weeks of annual visitation with the children anywhere he chooses, in addition to visits at the children's Georgia residence. The matter before us has to do primarily with whether the mother may be held in contempt in connection with a visit in Massachusetts that the father planned for the 2007 Christmas period.

At the end of November, 2007, the father, who had not exer-

---

said visitation shall occur in two (2) separate, two (2) week intervals. The [father] shall provide the [mother] with the dates and times of the travel arrangements related to said visitation not later than May 1st of each year.

"(b) *Christmas Vacation.* The [father] shall be entitled to visit with the Children from December 15th through December 29th of each year.

"(c) *Fall and Spring Vacation.* During the Fall and Spring seasons, the [father] shall have one (1) full week of visitation with the Children. The [father] shall give the [mother] thirty (30) day's [*sic*] notice of the dates he intends to exercise said visitation.

"(d) *Other Visitation.* Upon reasonable notice to the [mother], the [father] shall be entitled to periodically visit with the Children where they reside, not more than once per month with at least one week's notice. The Parties may also agree on any other visitation in addition to that set forth herein in a writing signed by both parties.

"(e) *Location of Visitation.* Except for visitation provided pursuant to subpart (d) of this [visitation schedule], the [father] shall visit with the Children at a location of his choosing. He shall provide the [mother] with a written itinerary and telephone contact numbers prior to said visitation.

"(f) *Cost of Visitation.* The [father] shall bear the costs associated with exercising his visitation under this [visitation schedule], including paying the transportation costs for the Children.

"3. *Parental Communication.* The [father] and the [mother] shall allow the Children to communicate with the other parent without interference. The Children may contact either party at anytime. When the Children are with the [mother], the [father] may contact the Children not more than twice each day. When the Children are with the [father], the [mother] may contact the Children not more than twice each day. Each party shall inform the Children of all attempted communication from the other parent as soon as reasonably possible."

cised his right to visit the children since their move to Georgia at the beginning of the year, made round-trip airline arrangements for the children to fly between Atlanta, Georgia, and Hartford, Connecticut, on December 15 and 29, 2007. They were to fly, sitting together, unaccompanied by an adult but in accordance with the airline's procedures for unaccompanied minors. The father's attorney sent an electronic mail message (e-mail) regarding the flight information to the mother's attorney, who responded by letter dated December 3, 2007,[2] as follows:

> "I am in receipt of your email dated November 28, 2007 and I have had the opportunity to discuss the contents with [the mother].

> "As you are no doubt aware, the parties' youngest child turned five a few days ago. [The mother] is not willing to allow the children at their young ages to fly unaccompanied, and thus [the father] will need to make the appropriate arrangements to have a mutually agreed upon adult accompany the children on the flights.

> "Additionally, as the marital home is scheduled to be sold on December 17, 2007, [the mother] will require information regarding the whereabouts of the children and contact information.

> "Thank you for your attention to this matter."

On Tuesday, December 11, 2007, four days before the scheduled trip to Hartford on Saturday, December 15, the father brought a contempt complaint against the mother, alleging that she had violated the divorce judgment by "failing and/or refusing to allow and/or facilitate [father's] Christmas visitation and/or his communication with his Children."[3] The father obtained a short order of notice with the hearing scheduled for 8:30 A.M. on Thursday, December 13; the mother was served in hand in Georgia at 11:35 A.M. on Wednesday, December 12, less than twenty-four hours before the scheduled hearing. The father

---

[2]The record does not reflect when the letter was received.

[3]In an accompanying affidavit, the father stated that he had called the children every day since they left Massachusetts but had only spoken with them on three occasions, and that he had not seen them since the end of January, 2007.

and his lawyer appeared at the hearing; while the mother did not, her counsel did, alerting the judge to the issue of inadequate notice. The hearing proceeded on the representations of counsel and the pleadings.

At the hearing, the father's counsel explained the travel arrangements that had been made, noted the absence of anything in the separation agreement requiring an adult escort, and relied on the December 3 letter from the mother's counsel to establish the mother's disobedience of the divorce judgment. The father's counsel also contended that the father had explained to the mother where the children would be staying and how the mother could contact them, but the father's counsel did not produce a writing as required by section 2(e) of the divorce judgment's visitation schedule. The father's counsel further represented that the father had been unable to reach his children by telephone despite his repeated efforts over many months (backed up by telephone records that counsel apparently had in hand but did not offer in evidence). However, the father's counsel stated:

> "As far as the telephone conversations go, Your Honor, we're happy to put that on for another day when [the mother] can come to town and explain herself . . . ."

The mother's counsel remarked on the father's failure to visit the children since their move to Georgia, reiterating the mother's concerns that their traveling unaccompanied in such circumstances would be difficult, particularly given the age of the youngest child, and disputing that the mother had received the requisite itinerary or contact information for the children's planned Massachusetts visit. She also noted that the father had refused to cooperate with the mother's effort to renew the children's passports, and thus, the mother did not have identification for the children in connection with boarding an airplane. The mother's counsel expressed nothing further about the mother's intentions with respect to the scheduled December 15 flight, nor did she address the matter of telephone communication, presumably in light of the father's counsel's remarks.[4]

The judge determined at the December 13 hearing that the

---

[4] We were advised at argument that the mother allowed the Christmas visitation as scheduled.

divorce judgment does not require the children to be accompanied by an adult on the plane and declined to modify the judgment in that regard. She also stated:

> "The children are to come for the visit. I'll make a judgment of contempt. In writing I want the itinerary, the addresses, and telephone numbers by tomorrow to [the mother's attorney]. . . . The visits will happen in Massachusetts as scheduled. . . . Make it happen, Counsel."

A judgment of contempt entered later that day as follows:

> "1. [The mother] is found in Contempt of the Court's December 20, 2006 Order.

> "2. Five thousand dollars from [the mother's] share of proceeds from the sale of 2 Forest Street, Worcester, Massachusetts shall be conveyed by the closing attorney to [the father's attorney] and disbursed by [the father's attorney] to pay the sanctions and counsel fees as outlined below.

> "3. [The mother] shall comply with the Court's order related to Christmas vacation and shall deliver the children to Atlanta airport on December 15 as previously arranged by the [father]. For each day that mother does not comply with this Court's December 20, 2006 Order related to Christmas vacation, she shall be sanctioned at a rate of $200.00 per day and the father shall be paid such amounts from the funds received from the sale of the marital home.

> "4. If the mother does not effectuate the travel plans put in place by father on November 28, 2007, she shall reimburse him the full amount he paid and shall be exclusively responsible for their round trip travel [in] connection with their Christmas vacation.

> "5. Father shall provide to mother by 5:00 P.M. on December 14, 2007, with the address and telephone number of the children's whereabouts in Massachusetts in writing.

> "6. Mother shall pay father $1,200.00 in counsel fees incurred in connection with [his] Complaint for Contempt and said fees shall be paid from [the mother's] proceeds of the marital home."

The judge subsequently explained her decision in a written procedural history, findings of fact, rationale and conclusions of law. The judge found, among other things, that "[s]ince January, Father has called the minor children every day. Father has never received a call back from the minor children." She also found that "[a]t the time of the hearing, Father had not provided Mother with a written itinerary and contact telephone numbers for the minor children's upcoming Christmas visitation with Father." In setting forth her rationale for finding the mother in contempt, the judge made clear that it was on two grounds: (1) the mother's refusal, evidenced by the December 3 letter from her counsel, to send the minor children to visit constituted not only " 'clear and undoubted disobedience' of a court order" but also "an anticipatory repudiation of the parties' separation agreement"; and (2) the mother's clear and undoubted disobedience of the judgment "by interfering with Father's communication with the minor children," noting that "[a]bsent interference from Mother, the Court finds no other reason why the minor children, the oldest of whom is thirteen (13), would not return at least one of Father's telephone calls."[5]

On appeal, the mother claims error in several respects, maintaining in essence that the judge abused her discretion when adjudicating the mother in contempt. We are constrained to agree and accordingly reverse.

As in *Mahoney* v. *Mahoney*, 65 Mass. App. Ct. 537, 540 (2006), quoting from *Kraft* v. *Police Commr. of Boston*, 417 Mass. 235, 239 (1994), "[w]e begin with basic principles. 'To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command.' " A complaint for civil contempt is "intended to achieve compliance with the court's orders for the benefit of the complainant." *Furtado* v. *Furtado*, 380 Mass. 137, 141 (1980). See *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 147 (2000). Contempt proceedings must satisfy the strictures of due process. See *Sodones* v. *Sodones*, 366 Mass. 121, 128 (1974); *Milano* v. *Hingham Sportswear Co.*, 366 Mass. 376, 379 (1974). "[D]ue process of law . . . requires that one charged with contempt of court be advised of

---

[5]The earlier entered contempt judgment itself, however, does not make reference to the matter of telephone communications.

the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." *Sodones, supra* at 127, quoting from *In re Oliver,* 333 U.S. 257, 275 (1948). "A defendant in a contempt proceeding may, of course, waive his right to an evidentiary trial." *Milano, supra.*

Insofar as the contempt judgment rests on the determination that the mother was in contempt of the Christmas visitation provision of the divorce judgment, it fails on several grounds. To the extent that the judge found that the mother was in "clear and undoubted disobedience" of that provision, it was solely on the basis of her counsel's December 3, 2007, letter. We need not defer to the judge's characterization of that letter, and we do not read it as stating unequivocally that the mother refused to put the children on the plane on December 15. The letter expresses the mother's arguably reasonable concerns and invites a response which apparently was never made, not even to provide the written information to which the mother was entitled under the same provision of the judgment.

Even if we were to read the letter as the judge did, it is not in these circumstances a sufficient basis upon which to adjudicate the mother in contempt. As a general matter, Massachusetts has not recognized the doctrine of anticipatory repudiation outside of the commercial law context, and the parties have not called to our attention any case law in Massachusetts extending the doctrine to a contempt proceeding, see *Crystal, petitioner,* 330 Mass. 583, 589-590 (1953), let alone to a visitation dispute brought before the court in a contempt proceeding. The cases on which the judge relied, *Cavanagh v. Cavanagh,* 33 Mass. App. Ct. 240 (1992), and Derby Refining Co. *vs.* Mondano, Land Court No. 123002 (Jan. 15, 1988), are neither controlling nor persuasive.[6] The doctrine runs counter to the usual rule in civil contempt pro-

---

[6]The *Cavanagh* case did not involve a contempt proceeding in Probate and Family Court. It was brought in Superior Court to enforce a marital agreement that, although incorporated in the divorce judgment, survived as an independent contract, unlike here. The question before the court was the legal effect of certain terms of that agreement; the court ordered specific performance based on the husband's repudiation of his obligation to make a payment within a

ceedings, where to find the defendant in contempt, "there must be a clear and unequivocal command and an equally clear and undoubted disobedience." *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990). While we are not prepared to say that there could never be a situation of contempt predicated on anticipatory repudiation in a child visitation context, we are confident that this is not such a situation. Here, even if the mother had failed to put the children on the plane on December 15, nothing significantly impacting the children's health, safety, or welfare would have been occasioned.

That being said, however, the judge was by no means without recourse to address the father's legitimate concerns, particularly in the aftermath of what appears to have been a contentious divorce. The hearing presented an opportunity for the judge to clarify, with counsel present, the meaning and requirements of the visitation provision in the 2006 order. Compare *Heistand* v. *Heistand*, 384 Mass. 20, 29-30 (1981); *Stabile* v. *Stabile*, 55 Mass. App. Ct. 724, 727 n.3 (2002); *Cabot* v. *Cabot*, 55 Mass. App. Ct. 756, 772 (2002); *Tatar* v. *Schuker*, 70 Mass. App. Ct. 436, 449 n.19 (2007); *Colorio* v. *Marx*, 72 Mass. App. Ct. 382, 385 (2008). The judge was not precluded from issuing an order indicating that the visitation provision did not require an adult companion for the children on the flights and requiring the mother to implement the Christmas vacation travel arrangements made by the father. The judge could also have scheduled a contempt hearing for December 16, after the time for mother's performance had come and gone, indicating that if the mother had not complied with the order related to Christmas vacation, the judge would likely impose coercive fines and other sanctions.

To the extent that the contempt judgment was predicated on the telephone communications issues, it too cannot stand. The judge did not hear any evidence on the point other than the representations of the father's counsel. While in certain circumstances this can suffice, see *Mahoney*, 65 Mass. App. Ct. at 540, and cases cited, we are not persuaded that the mother waived an evi-

---

reasonable time. *Cavanagh*, 33 Mass. App. Ct. at 241-245. The Derby Refining case was a contempt proceeding in Land Court addressing whether action proposed to be taken by a board of alderman was in circumvention of a court order; the court held that in the circumstances, such anticipatory resistance did not constitute contempt. Derby Refining Co., *supra.*

dentiary hearing, particularly where the father's counsel expressly looked to defer dealing with the telephone communications issue until the mother could be present.[7]

The judgment of contempt dated December 12, 2007, is reversed, and the award of attorney's fees paid by the mother to the father in the amount of $1,200 shall be returned to her.

*So ordered.*

---

[7]The mother, living in Georgia with physical custody of four young children, was served with notice of the hearing less than twenty-four hours before it was to occur. Although such short notice may raise serious concerns, we need not reach that matter here in view of counsel's presence at the hearing and in view of our decision.