Dortch-Okara, Barbara A., J.
The matter before the court is a Complaint for Civil Contempt pursuant to Mass.R.Civ.P. 65.3. The plaintiffs assert that the defendants, Lydia Gentile and Vittorio Gentile (the “defendants”), have violated two separate orders of the Norfolk Superior Court arising out of the current action which prohibited the defendants from transferring or disposing of funds and accounts held by them.
After a hearing without jury, and having reviewed and considered the testimony and exhibits, the court finds and rules as follows.
FINDINGS OF FACT
1. On February 8, 2007, plaintiffs filed a verified complaint resulting from a personal injury action arising out of the negligent operation by Vittorio C. Gentile, Jr., of a 1999 Lexus motor vehicle, which was owned and registered to Lydia Gentile and Vittorio Gentile.
2. On February 13, 2007, the undersigned judge, after notice and a hearing in which defendants’ counsel appeared in opposition, entered a Preliminary Injunction, which provided, in relevant part:
Vittorio C. Gentile, Jr., Lydia Gentile, and Vittorio Gentile, their agents, servants, trustees, employees, attorneys, representatives or others acting on their behalf are enjoined and restrained from transferring, selling, assigning, using, encumbering, or in any other way disposing of any and all monies, stocks, bank accounts, retirement accounts, 401K accounts, mutual fund accounts, personal property, inventory, equipment, real estate, accounts receivable, proceeds therefrom or any other assets, *70 other than the ordinary and customary living expenses and reasonable counsel fees until the subject litigation is resolved and/or further order of this court.
3. The issues in the underlying tort action were tried to a jury and on July 23, 2010, the jury found in favor of the plaintiff, Joseph Homsi, in the amount of $2,500,000.00 and in favor of Janice Silverio, as permanent guardian for Douglas Homsi, in the amount of $9,500,000.00.
4. On August 4, 2010, the court entered judgments in the amount of $2,492,000.00 (after offset for personal injury protection benefits), plus statutory interest at 12% per year from February 8, 2007, for Joseph Homsi, and $9,492,000.00 (after offset for personal injury protection benefits, plus statutory interest at 12% per year from February 8, 2007, for Janice Silverio as permanent guardian for Douglas Homsi.
5. Since the date of entry of these judgments, the plaintiffs have only received $200,000.00 from two insurance companies. There is no more insurance available to satisfy the judgments. Thus, these judgments remain, for the most part, unsatisfied and statutory interest continues to accrue.
6. On August 18, 2010, Judge Patrick F. Brady, after notice and a hearing in which the defendants’ counsel opposed its issuance, entered a Permanent injunction, which provided, in relevant part:
Vittorio C. Gentile, Jr., Lydia Gentile, and Vittorio Gentile (collectively, the “Defendants”), their agents, servants, trustees, employees, attorneys, representatives or others acting on their behalf are enjoined and restrained from transferring, selling, assigning, using, encumbering, or in any other way disposing of any and all accounts, personal property, inventory, equipment, real estate accounts, receivables, proceeds therefrom or any other assets, other than the ordinary and customary living expenses unless or until the Judgment entered against them in the subject litigation is paid in full and/or upon further order of this court.
7. The defendants filed post-trial motions to set aside the judgments, which were denied, except for one count only as to Vittorio Gentile, and the judgments otherwise remain in full force and effect. The defendants have filed an appeal of the July 23, 2010 jury verdict awarding judgment in favor of the plaintiffs.
8. The defendants have maintained various accounts at Hyde Park Savings Bank, Needham Bank, and Dedham Institution for Savings. The records of these institutions show that they have made withdrawals of at least $243,852.77 since the dates of the Preliminary and Permanent Injunctions issued by this court. It is notable that the majority of these withdrawals occurred in close proximity to the date of the jury verdict in this case.
9. The records of Needham Bank indicate that the defendants made eight bank account withdrawals from June 22, 2010, through October 28, 2010, amounting to $49,985.34. Four of the withdrawals occurred on one day, August 5, 2010, and the records also reveal that one of the withdrawals funded a $12,000.00 bank check to Daniel Gentile and two other withdrawals contained the notation “payable to Daniel Gentile.” The court also notes that these withdrawals include the early redemption of at least one certificate of deposit on July 26, 2010, three days after the jury verdict.
10. Dedham Institution for Savings’ records indicate the defendants withdrew $112,619.09 from their bank accounts between September 29, 2008 and December 16, 2010, the largest amounts of which were in late July 2010 to mid-August 2010. None of the accounts from which these funds were drawn was a retirement account. Tellingly, nearly all the withdrawals from June 23, 2010 through December 2010 were premature redemptions of certificates of deposits. Thus, in each case, the defendants paid penalties to obtain the funds. The defendants also maintain a safe deposit box at Dedham Institute of Savings, Box Number 265. One or both of the defendants assessed Box Number 265 four times in 2008, thirteen times in 2009, nine times in 2010 and five times in 2011. While there is no evidence that money was secreted in Box Number 265, the level of activity associated with the defendants’ box and the possibility that money could be secreted in the box raises the concern that all the defendants’ assets cannot be identified.
11. Hyde Park Savings Bank’s records indicate that the defendants withdrew $67,029.01 from their bank accounts. Of this amount, the defendants withdrew $44,654.90 from Hyde Park Savings Bank in one single day, July 24, 2010, the day after the July 23, 2010, jury verdict. More than $22,000.00 of these withdrawals was paid to the defendants in cash. Moreover, three of the accounts were certificates of deposits that had not reached their maturity dates. Again, the defendants were assessed penalties in order to make those withdrawals prematurely. The records reveal further that since January 2006, the defendants rented safe deposit Box Number 735 at Hyde Park Savings Bank. Between August 2007, and March 2011, Box Number 735 was accessed by one or both of the defendants on fourteen occasions, five of which occurred between June 2010 and March 2011.
12. The defendants have significant financial assets in their bank accounts according to the Schedule B forms to the defendants’ U.S. Individual Income Tax Returns for 2007, 2008, and 2009.
a. The 2007 Schedule B states the defendants’ aggregate interest income was $15,771.00;
b. The 2008 Schedule B states the defendants’ aggregate interest income was $12,357.00; and
*71 c. The 2009 Schedule B states the defendants’ aggregate interest income was $8,487.00.
13. According to the defendants’ Rule 69 interrogatory response, since 2007, they have spent a total of $9,140.00 per month for living expenses, including $2,000.00 per month for attorneys fees. In addition, they acknowledge contributing $15,000.00 to the education expenses of their grandchild, Christopher. The records of Hyde Park Savings Bank show withdrawals which total $3,802.00 paid to a correctional facility account associated with the defendants’ grandchild. The evidence shows that the amounts expended by the defendants for what they describe as their “living expenses" greatly exceed what would be considered a reasonable amount for “ordinary and customary living expenses” for a family of two of the defendants’ age and circumstances.
14. The defendants own rental property which generated revenues in excess of $76,900.00 in 2009, $69,600.00 in 2008, and $80,795.00 in 2007. Despite the defendants’ representation that rental income was deposited in accounts at Hyde Park Savings Bank and Needham Bank, there is no evidence that these sums were deposited into accounts at these institutions.
15. Both the Preliminary and the Permanent Injunctions are clear and unequivocal commands of the court. The record reveals no uncertainty or confusion on the part of the defendants as to their interpretation of the scope of the Injunctions as they never sought clarification, exemptions, or other guidance from the court concerning either the Preliminary Injunction or the Permanent Injunction.
16. Based on the foregoing, the court finds by clear and convincing evidence that the defendants knowingly and directly violated the Preliminary Injunction and the Permanent Injunction enjoining and restraining them from “transferring, selling, assigning, using, encumbering, or in any other way disposing of any and all monies, stocks, bank accounts . . .” when the defendants continually withdrew substantial amounts of money from their bank accounts totaling at least $243,852.77, the majority of which withdrawals occurring at or near the July 23, 2010, jury verdict date and which amounts far exceeded “ordinary and customary living expenses.”
RULINGS OF LAW
1. “In order to find a defendant in civil contempt, there must be a clear and unequivocal command and an equally clear and undoubted disobedience.” Larson v. Larson, 28 Mass.App.Ct. 338, 340 (1990); Bisienere v. Buccino, 36 Mass.App.Ct. 749, 753 (1994); Nickerson v. Dowd, 342 Mass. 462, 464 (1961); Diver v. Diver, 402 Mass. 599, 602-03 (1988). Here, the defendants have clearly and undoubtedly disobeyed the clear and unequivocal command of the court.
2. The burden of proof required of the party asserting the contempt is that the finding of contempt be supported by clear and convincing evidence of disobedience to a clear and unequivocal command. In Re Birchall, 454 Mass. 837, 852-53 (2009). The plaintiffs have met their burden of proof.
3. Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases. It has been said that the proof must be “strong, positive, free from doubt” and “full, clear and decisive." Stone v. Essex County Newspaper, Inc., 367 Mass. 849, 871 (1975). The plaintiffs have met their burden of proof by clear and convincing evidence.
4. Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt. Pedersen v. Klare, 74 Mass.App.Ct. 692, 699-700 (2009). Here, the Injunctions issued by the court were unambiguous and, in finding defendants’ disobedience clear, the court considered a substantial amount of evidence in the form of testimony, bank records and tax returns. Contrary to Pedersen, the court is not relying on the representations of plaintiffs’ counsel.
ORDER FORJUDGMENT
For the foregoing reasons, a judgment of civil contempt shall enter against the defendants, Lydia Gentile and Vittorio Gentile, and it is hereby ORDERED that;
1. The defendants shall post with the court the amount of $243,852.77 within 20 days of the date of this Order;
2. The defendants shall liquidate any and all retirement accounts, including, but not limited to, IRA accounts held at Needham Bank or any other financial institution, and post the net proceeds from said liquidation with the court to satisfy the judgment in this matter within 20 days of the date of this Order;
3. Neither the defendants nor their agents may access any safe deposit box of the defendants now in existence or hereafter rented, unless plaintiffs’ counsel is present with the defendants or defendants’ counsel to view and confirm assets contained therein. A listing of assets contained in any safe deposit boxes shall be prepared jointly by plaintiffs’ counsel and defendants’ counsel within 10 days of the date of this Order;
4. The court hereby appoints Beacon Services, Inc., or any other qualified property management company, at reasonable cost to the defendants, to receive all rental payments and pay the reasonable expenses necessaiy to maintain the rental property and conduct all reasonable management and rental services for all rental property owned by the defendants, including, but not limited to, the following properties:
14 Andrea Drive, Canton, Massachusetts;
*72 16 Andrea Drive, Canton, Massachusetts;
842-844 Canterbury Street, Roslindale, Massachusetts;
940 East Street, Walpole, Massachusetts;
839 Shoot Fly Hill Road, Centerville, Massachusetts;
The rental property manager shall deposit all rental payments into a newly opened account to which only the property manager shall have access. The rental property manager shall have the power to lease the properties, advertise the properties at defendants’ cost, repair the properties at defendants’ cost, and maintain the properties at its discretion as necessary to insure the continuing rental of the properties.
5. The defendants shall pay the plaintiffs’ reasonable attorneys fees incurred in prosecuting this contempt action. Plaintiffs’ counsel shall serve his affidavit of attorneys fees and supporting documentation on defendants’ counsel within 30 days of the date of this order. The affidavit, supporting documentation, and any opposition shall be filed with the court in accordance with Rule 9A.