A Superior Court judge concluded that the defendant, William R. Kelley, Jr., testified untruthfully at his deposition, and the judge therefore allowed the plaintiffs' motion for contempt. Concluding that the defendant's statements made under oath during a postjudgment deposition supported the finding of contempt, we affirm.
Background. The plaintiffs, the two daughters of the defendant, filed an action against him in 2010 alleging that he sexually abused them over the course of many years. Prior to disposition on that action, the parties entered into a stipulation, and the court entered an order that prohibited the defendant from, inter alia, selling his thirteen-acre horse ranch located in Utah (property) without the plaintiffs' approval and leave of court. In October, 2014, the jury awarded the plaintiffs $5 million each plus interest and costs. A panel of this court affirmed the judgment in an unpublished decision issued pursuant to rule 1:28. See B.K. v. Kelley, 89 Mass. App. Ct. 1127 (2016).
After the jury trial in the previous litigation, the plaintiffs served a notice of deposition on the defendant to obtain information regarding his assets available to satisfy the judgment against him. The defendant filed a motion to quash and for a protective order that was denied. Following an order to appear, the defendant attended the deposition on January 15, 2015.
During the deposition, the plaintiffs' attorneys asked the defendant, in pertinent part, about whether or not he had asked anybody to sell the property, whether he had any discussions with anybody other than Don Weiss about selling the property, and whether he had any intention to sell the property. As discussed in more detail below, the defendant provided incomplete and false answers to these questions.
After the deposition, the plaintiffs learned from the defendant's Utah counsel, Attorney Patricia Geary Glenn, that the defendant had provided false testimony at the deposition.[3] In addition to her legal representation, Glenn also had assisted the defendant in his efforts to sell the property, beginning in or around September, 2014. On December 29, 2014, approximately two weeks prior to the defendant's deposition, Glenn and the defendant had entered into a written agreement entitled "AUTHORIZATION AND FEE AGREEMENT TO SHOW & SELL UNLISTED PROPERTY" (December, 2014, agreement). This agreement authorized Glenn "to show and offer for sale" the property, for a seven-month period, "for the asking price of $19,000,000" and to "consider and convey all other reasonable offers on the [p]roperty to [the defendant]." The defendant agreed to pay Glenn a commission of three percent of the sales price if she was successful. Because of her involvement, Glenn was aware of various efforts to market and to sell the property.
In May of 2015, after reviewing the defendant's deposition testimony and believing it to be false, Glenn filed a motion that informed the court that the defendant had provided false testimony at the deposition regarding his knowledge of the value of the property and his intent and efforts to sell the property. In particular, Glenn stated that she herself was involved with offering to sell the property in September, 2014, and had conveyed an informal offer of $7 million for the property to the defendant in September of 2014; that in January of 2015, the defendant met with a Park City, Utah commercial real estate broker "for purposes of selling the [p]roperty"; and that one day before and one day after his deposition in January, 2015, the defendant and Glenn had discussed, by written communication, selling the property.
Based on the information provided by Glenn, the plaintiffs filed a complaint for contempt against the defendant claiming that he committed perjury and fraud on the court. Following an evidentiary hearing, a Superior Court judge concluded that the defendant provided false testimony at the deposition. In his decision and order, the judge stated that "the defendant is hereby adjudged in contempt of the [o]rder to provide truthful testimony at his deposition on January 15, 2015," and ordered the defendant to pay the plaintiffs' attorney fees and costs, as well as Glenn's fees and expenses (contempt order).[4] After the judge denied the defendant's motion pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974), the fees and costs were assessed, a judgment of contempt entered, and the defendant appealed.
Discussion. 1. Legal standards. We review the judge's contempt order for abuse of discretion. See K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014). We also review the denial of a rule 59 motion for abuse of discretion. See Quarterman v. Springfield, 91 Mass. App. Ct. 254, 260 (2017). To the extent that the defendant challenges the judge's findings of fact, we review under the clearly erroneous standard. See White v. Hartigan, 464 Mass. 400, 414 (2013).
"[C]ivil contempt consists in failing to do something which the contemnor is ordered by the court to do." O'Connell v. Greenwood, 59 Mass. App. Ct. 147, 149 (2003), quoting Dangel, Massachusetts Jurisprudence, Contempt § 3, at 3 (1939). A finding of civil contempt must "be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853 (2009). "A complaint for civil contempt is 'intended to achieve compliance with the court's orders for the benefit of the complainant.' " Pederson v. Klare, 74 Mass. App. Ct. 692, 697 (2009), quoting Furtado v. Furtado, 380 Mass. 137, 141 (1980).
2. Analysis. a. Challenged statements. The defendant's deposition was taken pursuant to an order of the court. The judge determined that implicit in that order was that the defendant must testify truthfully, and the judge found that "there is no question" that he did not do so.[5] The judge focused in particular on three statements the defendant made. The defendant contends that the evidence was insufficient to support a finding that he wilfully testified falsely. We disagree.
First, the evidence was sufficient to prove that the defendant wilfully testified falsely as to whether or not he had asked anybody to sell the property. In response to the question, "Did you ask somebody to sell the property?" the defendant answered, "To sell it? No." The defendant contends that the term "sell" is ambiguous, that as a matter of law Glenn could not serve as a real estate broker and therefore the December, 2014, agreement was not a sales contract, and that Weiss was the defendant's "key person for evaluating any potential sale prospects." These arguments are unavailing. Approximately two weeks before the deposition, the defendant entered into the December, 2014, agreement with Glenn, which authorized her to "to show and offer [the property] for sale" for a seven-month period. Regardless of the ultimate validity of the agreement, the evidence demonstrated that the defendant had "ask[ed] somebody to sell the property," and thus testified falsely. The materiality of his statement is also apparent. By answering "no," the defendant prevented the plaintiffs from inquiring further about the identity of the parties involved in selling the property, thereby stalling their efforts to ascertain the value and status of the defendant's assets, which was the purpose of the deposition.[6] See Commonwealth v. D'Amour, 428 Mass. 725, 744 (1999). The defendant's statement was materially false and misleading. Accordingly, he disobeyed a clear and unequivocal order to tell the truth at his deposition, and the judge did not abuse his discretion in adjudging the defendant in contempt for this testimony. See Birchall, petitioner, 454 Mass. at 853 ; K.A., 86 Mass. App. Ct. at 567.
The evidence also was sufficient to prove that the defendant wilfully testified falsely by answering, "I don't know," when asked whether he had any discussions with anybody except Weiss about selling the property. The defendant asserts that he answered this way because he could not "conclusively answer" whether various discussions "could be characterized as concerned with 'selling' the property." The evidence and testimony that the defendant had an agreement with Glenn to sell the property, had met with Glenn about selling the property, and had met with a commercial real estate broker in Utah about two weeks before the deposition, supported a finding of wilful false testimony.[7] The December, 2014, agreement alone demonstrates the falsity of his statement. Combined with Glenn's testimony, the judge did not err in determining that the defendant had discussions with others about selling the property and that his statement was untruthful. See G. L. c. 268, § 1. This false statement was also material to the purpose of the deposition because it prevented the plaintiffs from learning about the true status of the property and the defendant's efforts to sell it. See D'Amour, 428 Mass. at 744. Where the defendant testified untruthfully regarding discussions with people other than Weiss, the judge did not abuse his discretion in finding the defendant in contempt for disobeying a clear and unequivocal order to testify truthfully.[8] See K.A., 86 Mass. App. Ct. at 567. See also Demoulas v. Demoulas Super Mkts., 424 Mass. 501, 565 (1997) ("Civil contempt is a means of securing for the aggrieved party the benefit of the court's order").
b. Attorney-client privilege. The defendant contends that the attorney-client privilege barred disclosure of his communications with Glenn regarding the property, including disclosure of the December, 2014, agreement. He argues that Glenn's disclosures violated her professional obligation to maintain confidentiality and that the disclosures were not subject to any exception. We disagree.
"[T]he attorney-client privilege shields from the view of third parties all confidential communications between a client and [his] attorney undertaken for the purpose of obtaining legal advice." Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 448 (2007). See Mass. G. Evid. § 502 (2018). While the privilege is "highly valued," it is nevertheless construed narrowly. See Commissioner of Rev. v. Comcast Corp., 453 Mass. 293, 304 (2009), quoting Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 615 (2007). The party asserting the existence of the attorney-client privilege carries the burden to prove it applies. See Clair v. Clair, 464 Mass. 205, 215 (2013).
The defendant argues that the December, 2014, agreement was a fee agreement meant to compensate Glenn for her legal work. This argument is unavailing and was rejected as "wholly incredible" by the judge.[9] Although the agreement contained the words "fee agreement" in the title, there is nothing in the agreement to indicate it was anything other than an authorization and compensation agreement for Glenn's efforts "to show and offer [the property] for sale." See Suffolk Constr. Co., 449 Mass. at 448. We discern no error in the finding that the December, 2014, agreement was not for the purpose of obtaining legal advice and was thus not subject to the attorney-client privilege. See id. (attorney-client privilege protects only confidential communications undertaken for purpose of obtaining legal advice). Cf. Neitlich v. Peterson, 15 Mass. App. Ct. 622, 624 (1983) ("An initiating letter to obtain professional legal services falls within the lawyer-client privilege").
Additionally, Glenn testified during the hearing that while the defendant was in Utah from December, 2014, to January, 2015, she, the defendant, and a commercial real estate broker met together in Utah and "discussed selling the property." Glenn also testified on cross-examination that the defendant "was talking to [the commercial real estate broker] about selling the property any way he could." Insofar as a third party participated in the conversation, and the parties discussed the property and not the rendering of legal services, the attorney-client privilege could not apply to this communication in any event. See Commissioner of Rev., 453 Mass. at 306 (communication must be made in confidence and "[d]isclosing attorney-client communications to a third party ... generally undermines the privilege"). Moreover, Glenn's testimony regarding offers and negotiations involving the property likewise fell outside of the attorney-client privilege. See ibr.US_Case_Law.Schema.Case_Body:v1">id. See also Suffolk Constr. Co., 449 Mass. at 457 (citing Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 [1997], which discusses crime-fraud exception to attorney-client privilege).[10]
In sum, under the particular facts of this case, we discern no error or abuse of discretion in the judge's issuance of the contempt judgment.
Judgment of contempt entered September 25, 2015, affirmed.[11]

At the time of the proceeding Glenn was licensed to practice law in Utah and had served as counsel for the defendant in Utah litigation involving the property. She has also assisted in the defense of this case and in drafting posttrial motions in Massachusetts.

A different Superior Court judge previously found the defendant in contempt for failing to produce certain requested documents at his deposition.

We discern no error in the judge's determination on this point and the parties do not contest that the defendant's oath at the deposition required him to testify truthfully. The order requiring the defendant to attend the deposition coupled with the requirement that he testify truthfully constituted "a clear and unequivocal command," which the defendant "undoubtedly disobeyed," as explained infra. Birchall, petitioner, 454 Mass. at 852-853.

The parties agree that "the purpose of the inquiry involved the current status and value of the defendant's assets" in order to satisfy the judgment against him.

The defendant argues that the judge's finding that the defendant met with the commercial real estate broker and therefore "sought to utilize [his] efforts in potential sales efforts" was clearly erroneous. We disagree. The evidence supports the finding that the defendant met with the commercial real estate broker about two weeks before the deposition and that the discussion involved the sale of the property. See White, 464 Mass. at 414.

The judge's determination that the defendant testified untruthfully by stating that he did not have any intention to sell the property "right now," while a closer call, also was not erroneous in view of the December, 2014, agreement, the defendant's meeting with the commercial real estate broker and Glenn, and the defendant's written communications with Glenn the day before and the day after the deposition. Even assuming, arguendo, that the judge erred as to this statement, if any of the three statements were wilfully false, the contempt order stands, a point which the defendant acknowledged during oral argument. See, e.g., O'Connell, 59 Mass. App. Ct. at 151-154 (affirming finding of contempt where some, but not all, of the grounds for contempt were substantiated).

The judge specified that Glenn provided the information "[i]n conformity with the Rules of Professional Conduct."

We are not persuaded by the defendant's contention that Glenn's disclosures violated her professional duty to maintain the confidentiality of his information under Mass. R. Prof. C. 3.3, 426 Mass. 1383 (1998). Glenn testified that after reviewing excerpts of the defendant's deposition testimony, she advised him that she believed the statements were false, explained the consequences to him of failing to remediate his false statements, and then filed her emergency motion pursuant to rule 3.3. At the time, Glenn had the requisite knowledge to ascertain the untruthfulness of his statements. Moreover, she knew that the court had previously placed restrictions on the property in order for the plaintiffs to secure the judgment against the defendant. These two factors combined to place Glenn in a position where, had she "fail[ed] to disclose" this information, she may have "assist[ed] a ... fraudulent act by the [defendant]." In any event, where there was no breach of the attorney-client privilege we need not delve further into the substance of the claim.

For the reasons detailed supra, we discern no abuse of discretion in the judge's denial of the defendant's rule 59 motion. See Quarterman, 91 Mass. App. Ct. at 260.